IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
|     Defendant. | § | |

**DEERE & COMPANY'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile
Chris A. Blackerby
State Bar No. 00787091
cblackerby@germer-austin.com
Ben Zinnecker
State Bar No. 24066504
bzinnecker@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DEERE & COMPANY**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

I.       FACTUAL BACKGROUND ................................................................................. 1

II.      STANDARD FOR SUMMARY JUDGMEMT ...................................................... 2

III.     ARGUMENT AND AUTHORITIES .................................................................... 3

         A.      The document at issue does not constitute an express warranty ................. 4

         B.      Deere did not make the promise alleged by plaintiff ................................. 7

         C.      Deere's representations were not part of the basis of the ............................ 7
                 bargain and Cody Hughes did not rely on any "warranty"
                 provided by Deere

         D.      Deere did not violate the affirmations or promises in its ........................... 9
                 "warranty" – there has been no finding of product defect

                 1.      The circumstances do not warrant an inference of ......................... 10
                         defect

                 2.      Hamers' theory is not reliable and constitutes no .......................... 12
                         evidence of defect

         E.      The fire was not proximately caused by Deere's failure to ...................... 14
                 comply with express warranty

IV.      PRAYER ............................................................................................................. 21

CERTIFICATE OF SERVICE .......................................................................................... 22

Appendix .............................................................................................................. (attached)

         1.      Warranty ....................................................................................... APPX.001
                 (Exhibit A)

2.      May 19, 2020 Deposition of Cody W. Hughes ........... APPX.002-APPX.013
        (Exhibit B)

3.      July 15, 2020 Deposition of Mark Whatley ................ APPX.014-APPX.041
        (Exhibit C)

4.      July 28, 2020 Deposition of Cade Owen ..................... APPX.042-APPX.051
        (Exhibit D)

5.      Expert Report of Steven Hamers ................................. APPX.052-APPX.053
        (Exhibit E)

6.      Expert Report of Mark Whatley .................................. APPX.054-APPX.055
        (Exhibit F)

# TABLE OF AUTHORITIES

## Cases

*Ackermann v. Wyeth Pharm.,* .......................................................................... 7
    471 F. Supp. 2d 739, 744 (E.D. Tex. 2006), aff'd, 526 F.3d 203 (5th Cir. 2008)

*Alcan Aluminum Corp. v. BASF Corp*., .............................................................. 4
    133 F. Supp. 2d 482, 495 (N.D. Tex. 2001)

*Allis-Chambers Credit Corp. v. Herbolt,* ........................................................... 6
    49 N.E.2d 293, 301 (Ohio App. 1984)

*Anderson v. Liberty Lobby, Inc.*, ....................................................................... 3
    477 U.S. 242, 248 (1986)

*Babick v. Berghuis,* ...................................................................................... 16
    650 F.3d 571, 580 (6th Cir. 2010) (dissent)

*Barrios,* ...................................................................................................... 4
    156 S.W.3d at 549

*Celotex Corp. v. Catrett,* ................................................................................. 2
    477 U.S. 317, 325 (1986)

*Ciba-Energy Corp. v. Alter,* ............................................................................. 8
    834 S.W.2d 136, 147 (Ark. 1992)

*Cosman v. Ford Motor Co.,* .............................................................................. 5
    285 Ill. App. 3d 250, 257, 674 N.E.2d 61, 66 (1996)

*Enter. Leasing Co. of Houston v. Barrios*, ......................................................... 4
    156 S.W.3d 547, 549 (Tex. 2004)

*Ford Motor Co. v. Ridgway,* ........................................................................ 9, 20
    135 S.W.3d 598, 600 (Tex. 2004)

*Gernhardt v. Winnebago Industries*, ................................................................. 6
    2003 WL 23976324, at *3 (E.D. Mich. Dec. 30, 2003)

*Goddard v. General Motors Corp.*, .................................................................... 6
    60 Ohio St.2d 41, 44, 396 N.E.2d 761 (Oh. 1979)

*Gordon v. Sig Sauer, Inc.*, ................................................................................ 3
    CV H-19-585, 2019 WL 4572799, at *13 (S.D. Tex. Sept. 20, 2019)

*Mack Trucks, Inc. v. Tamez*, ........................................................................... 15
    *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 583-4 (Tex. 2006)

*Mata v. Energy Absorption Sys., LLC*, ............................................................ 20
    01-09-01097, 2011 WL 1233584, at *5 (Tex. App.—Houston
    [1st Dist.] Mar. 31, 2011, no pet.)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, .......................................... 3
    475 U.S. 574, 587 (1986)

*McManus v. Fleetwood Enterprises, Inc.*, ......................................................... 8
    320 F.3d 545, 550 (5th Cir. 2003)

*Morris v. Adolph Coors Co.*, ............................................................................ 4
    735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, write ref'd n.r.e.)

*Mydlach v. DaimlerChrysler Corp.*, ................................................................ 6
    875 N.E.2d 1047, 1058 (Ill. 2007)

*Napoli-Bosse v. General Motors*, ..................................................................... 5
    No. 3:18-cv-1720, 2020 WL 1677089 at *6 (D. Conn. April 6, 2020)

*Neece v. A.A.A. Realty Co.*, .............................................................................. 4
    159 Tex. 403, 416, 322 S.W.2d 597, 605 (1959)

*Neece*, ............................................................................................................... 4
    322 S.W.2d at 605

*Pack v. Damon Corp.*, ...................................................................................... 6
    434 F.3d 810, 814 (6th Cir. 2006)

*PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, ..................... 6
    146 S.W.3d 79, 96 n. 88 (Tex. 2004)

*Schmaltz v. Nissen*, .......................................................................................... 8
    431 N.W.2d 657, 661 (S.D. 1988)

*Shafer*, .................................................................................................. 11, 12, 19
    2010 WL 8757823, at *4

*Travelers Lloyds Ins. Co. v. All-Glass Aquarium Co., Inc.,* ................................................. 9
    3:12-CV-3635-L, 2014 WL 222356, at *6 (N.D. Tex. Jan. 17, 2014)

*Underwriters at Lloyds, Syndicate 242 v. Turtle Creek P'ship, Ltd.,* .................................. 4
    716 F. Supp. 2d 633, 638-9 (S.D. Tex. 2010)

*Underwriters at Lloyds,* .................................................................................................. 4
    716 F. Supp. 2d at 638-9

*Wal-Mart Stores, Inc. v. Merrell,* .................................................................................. 20
    313 S.W.3d 837 (Tex. 2010)

*Watson & Son Landscaping, Partners v. Power Equipment Co.,* ...................................... 6
    2003 WL 22326967, at *4 (Ct. App. Tenn. Apr. 29, 2003)

*Woolums v. National RV,* ................................................................................................ 6
    530 F. Supp. 2d 691, 697 (M.D. Pa. 2008)

## <u>Statutory Authorities</u>

Federal Rule of Civil Procedure 10(c)........................................................................... 10, 14

Federal Rule of Civil Procedure 56(c)............................................................................... 2

Tex. Bus. & Com. Code Ann. § 2.313................................................................................. 5

Tex. Pattern Jury Charges 71.3 (manufacturing defect) and ...................................... 9
and 71.4 (design defect)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
| Defendant. | § | |

## DEERE & COMPANY'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Deere & Company ("Deere") files this motion for summary judgment based on the following grounds: (1) the document plaintiffs allege is a "warranty" does not constitute an express warranty under Texas law; (2) plaintiff misstates the promises Deere; (3) plaintiff has no evidence that Cody Hughes relied on an express warranty; (4) plaintiff has no evidence that the cotton stripper was defective; (5)  plaintiff has no evidence that a defect in the cotton stripper proximately caused the fire; and (6) the only remedy permitted under the document at issue is repair and replacement of any part found to be defective.

## I.
## FACTUAL BACKGROUND

This case arises out of a fire that occurred on October 24, 2017 involving a Deere CS690 Cotton Stripper owned by plaintiff's insured, CWH Farms.  *See* ECF No. 1, Complaint ¶¶ 8-13. Cody Hughes ("Hughes"), the owner of CWH Farms who purchased the cotton stripper in August of 2017, filed an insurance claim for the damage to the cotton stripper.  *Id*.  Plaintiff paid the claim and brought this subrogation action against Deere

alleging breach of express and implied warranties. *Id*. at ¶¶ 12-18. Deere moved to dismiss plaintiff's implied warranty claims, which the Court granted on August 12, 2019. ECF Nos. 5, 14. Plaintiff's only remaining claim is that Deere breached an express warranty that the cotton stripper "would be free from defects in materials and workmanship." *See* ECF No. 1, at ¶¶ 15-16.

Plaintiff's claim fails as a matter of law because there was no express warranty that the cotton stripper would be free from defects in materials and workmanship. Instead, Deere promised to "repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term." Appx. at 001 (Ex. A). Hughes did not read, much less rely on, any promise contained in the "warranty" document. And plaintiff has produced no competent evidence – from experts or otherwise – the cotton stripper was defective or that a defect proximately caused the fire. Finally, the "warranty" at issue expressly limits plaintiff's recovery to repair or replacement of any part found to be defective.

## II.
## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The summary judgment movant has the initial burden of "'showing' that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317,

325 (1986).  Once that has been done, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

The nonmovant cannot rely on the mere allegations of his pleadings.  Rather, the nonmovant must use affidavits, depositions, answers to interrogatories, or admissions to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 325.  An issue is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If a reasonable jury could not do so, summary judgment should be granted.  *Id.*; s*ee also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.
### ARGUMENT AND AUTHORITIES

Plaintiff's sole claim against Deere is for breach of express warranty.  *See* ECF No. 1, ECF No. 5.  To avoid summary judgment on its claim for breach of express warranty, plaintiff must prove (1) an express affirmation of fact or promise by Deere relating to the cotton stripper; (2) that such affirmation of fact or promise became a part of the basis of the bargain between Deere and Hughes; (3) that Hughes relied upon the affirmation of fact or promise; (4) that Deere failed to comply with the affirmation of fact or promise; (5) that plaintiff was financially injured by Deere's failure to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's financial injury.  *See Gordon v. Sig Sauer, Inc.*, CV H-19-585, 2019 WL 4572799, at *13 (S.D. Tex. Sept. 20, 2019);

*Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 495 (N.D. Tex. 2001), *citing Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, write ref'd n.r.e.).

A.    The document at issue does not constitute an express warranty.

        Although the title of the document at issue contains the word "warranty," that title does not create a warranty under the law.  *See Underwriters at Lloyds, Syndicate 242 v. Turtle Creek P'ship, Ltd.*, 716 F. Supp. 2d 633, 638-9 (S.D. Tex. 2010); *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004), *citing Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 416, 322 S.W.2d 597, 605 (1959).  Under Texas law, courts must consider whether the language and provisions of the document includes the basic "indicia usually associated with a warranty."  *See Underwriters at Lloyds*, 716 F. Supp. 2d at 638-9 (finding "warranty" in insurance policy did not include the basic "indicia usually associated with a warranty"); *Barrios*, 156 S.W.3d at 549 ("Although we recognized that in certain cases, courts may consider the title of a contract provision or section to interpret a contract, 'the greater weight must be given to the operative contractual clauses of the agreement.'"), *citing Neece*, 322 S.W.2d at 605 ("[a]n instrument is that which its language shows it to be, without regard to what it is [labeled].").

        Plaintiff's breach of express warranty claim fails as a matter of law because, despite its title, the language of the document does not include the basic indicia usually associated with a warranty. Section 2.313 of the Texas Business and Commerce Code provides that express warranties are created by a seller as follows:

> Any affirmation of fact or promise made by the seller to the buyer which **relates to the goods** and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

TEX. BUS. & COM. CODE ANN. § 2.313 (emphasis added).[1]  The document at issue states Deere will "repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term." Appx. at 001 (Ex. A).  Deere made no promise related to the cotton stripper – it did not, as plaintiff claims, promise the cotton stripper would be free from defects in material or workmanship or that it would not catch fire.  *See id.*  Instead, Deere's only promise was that it would repair or replace any warranted part of the cotton stripper found to be defective within the warranty period.  *Id.*  Because Deere's promise does not relate to the performance of the cotton stripper but, rather, Deere's conduct if some part of the cotton stripper is found to be defective, the document does not constitute an express warranty. *See* TEX. BUS. & COM. CODE ANN. § 2.313; *see Cosman v. Ford Motor Co.,* 285 Ill. App. 3d 250, 257, 674 N.E.2d 61, 66 (1996) ("A promise to repair parts of the powertrain for six years is a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way.")

Courts across the country have found that provisions promising to repair or replace defective parts do not constitute express warranties. *Napoli-Bosse v. General Motors*, No.

---

[1]  Although not relevant here, Section 2.313 also provides that an express warranty can be created by a seller through:

> (2)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3)    Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

3:18-cv-1720, 2020 WL 1677089 at *6 (D. Conn. April 6, 2020) (finding New Vehicle Limited Warranty providing for repairs during warranty period does not constitute express warranty and dismissing breach of express warranty claim); *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) (holding warranty promising manufacturer will repair or replace defective parts during warranty period is not an "express warranty" under the UCC); *Gernhardt v. Winnebago Industries*, 2003 WL 23976324, at *3 (E.D. Mich. Dec. 30, 2003) (holding language providing that repair was sole remedy for any defect was not an "express warranty" under Michigan statute based on UCC); *Allis-Chambers Credit Corp. v. Herbolt*, 49 N.E.2d 293, 301 (Ohio App. 1984) (noting that "all promises are not warranties" and finding repair or replace language is not warranty, but is a remedy*); see also PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 96 n. 88 (Tex. 2004) (noting drafters of UCC have proposed defining a promise to repair or replace goods as a "remedial promise" to clarify that it "is not a warranty at all.").[2] Plaintiff's breach of express warranty claim fails as a matter of law because Deere made no promise regarding the performance of the cotton stripper.

---

[2] Other courts have reached the opposition conclusion. *See, e.g., Watson & Son Landscaping, Partners v. Power Equipment Co.*, 2003 WL 22326967, at *4 (Ct. App. Tenn. Apr. 29, 2003) (promise to repair an excavator's hydraulic system was an "affirmation of fact or promise made by the seller to the buyer which relate[d] to the goods and [became] part of the basis of the bargain," and thus an "express warranty"); *Goddard v. General Motors Corp.*, 60 Ohio St.2d 41, 44, 396 N.E.2d 761 (Oh. 1979) (a "fair reading" of warranty promising to "repair any defective or malfunctioning part of the vehicle" created an "express" warranty under Ohio statute based on UCC § 2-313); *Woolums v. National RV*, 530 F. Supp. 2d 691, 697 (M.D. Pa. 2008) (repair-or-replace warranty is an "express warranty" for purposes of Pennsylvania analogue of UCC § 2-313); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (finding that the Michigan Supreme Court would likely interpret a repair-or-replace warranty to be an express warranty under the Michigan analogue of UCC § 2-313).

B.     Deere did not make the promises alleged by plaintiff.

Plaintiff alleges Deere "warranted the Cotton Stripper would be free from defects in materials and workmanship ... for 4 years or 1,000 hours." ECF 1 at ¶15.[3]  But the express language of the "warranty" document conclusively disproves this claim.  Deere only agreed to "repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term."  Appx. at 001 (Ex. A).  Summary judgment is required because Deere cannot breach a warranty or promise it never made.

C.     Deere's representations were not part of the basis of the bargain and Cody Hughes did not rely on any "warranty" provided by Deere.

Deere is also entitled to summary judgment because there is no evidence that any affirmation of fact or promise made by Deere (1) became a part of the basis of the bargain between Deere and Hughes or (2) was relied upon by Hughes.  *See Ackermann v. Wyeth Pharm.,* 471 F. Supp. 2d 739, 744 (E.D. Tex. 2006), aff'd, 526 F.3d 203 (5th Cir. 2008) (granting summary judgment on breach of express warranty claims because there was no evidence that plaintiff relied on any affirmation made by the defendant).  Plaintiff's pleading does not even allege the "warranty" document was part of the basis of the bargain or was relied upon by Hughes.  *See* ECF No. 1; *Gordon*, 2019 WL 4572799, at *14 (dismissing express warranty claim because plaintiff did not allege what defendant said or what he relied on when purchasing pistol).  And Hughes testified that – although he was

---

[3] As previously noted, the Court dismissed plaintiff's breach of implied warranty claims on August 12, 2019.

aware the "warranty" document was part of the financing agreement – he did not read it.
Appx. at 005, (Ex. B at 46:19-47:7).[4] Plaintiff cannot demonstrate that any statement in the
"warranty" document became part of the basis of the bargain or was relied upon by Hughes
because he did not read the document. *See, e.g., McManus v. Fleetwood Enterprises, Inc.*,
320 F.3d 545, 550 (5th Cir. 2003) (finding purchasers who did not read tag regarding
towing capacity did not rely on tag to any extent); *Ciba-Energy Corp. v. Alter*, 834 S.W.2d
136, 147 (Ark. 1992) (finding statement not read by plaintiff could not be basis of the
bargain); *Schmaltz v. Nissen*, 431 N.W.2d 657, 661 (S.D. 1988) (holding language on seed
bag was not basis of bargain when not read until after sale completed).

The evidence contradicts any claim that Hughes believed the "warranty" document
required Deere to cover any damage the cotton stripper sustained in the fire. Hughes was
"fully aware of the dangers" of fire and received extensive training from Hurst Farm
Supply regarding the cotton stripper, with particular emphasis on the danger of fire and fire
safety. Appx. at 003-004 (Ex. B at 39:12-42:21; 44:7-12). He understood that harvest
equipment, including cotton strippers, is prone to catch fire for numerous reasons including
a dry crop, grain dust, and foreign materials such as rocks, etc. *Id.* And he testified that
Deere required consumers to insure the cotton strippers, but that the insurance offered by
Deere did not cover fire. Appx. at 003 (Ex. B at 40:11-14) ("you can insure it through John
Deere … [b]ut … they do not insure it for fire"); Appx. at 005 (Ex. B at 46:19-24) ("they
cover everything up to a certain point, but no fire."). In fact, the risk of fire was one reason

---

[4] Exhibit 4 to Hughes' deposition is the "warranty" document at issue. Appx. at 002 (Ex.
B at 3:17-19).

Hughes insured the cotton stripper with plaintiff.  Appx. at 004 (Ex. B at 42:5-8).  Hughes'
own testimony contradicts plaintiff's claim he relied on or expected Deere to cover any
damage the cotton stripper sustained in the fire.  Instead, Hughes relied on the insurance
policy he purchased from plaintiff to cover such damages.  Appx. at 004 (Ex. B at 42:5-8);
*see also* Appx. at 010 (Ex. B at 86:14-16; 88:9-89:24).

Summary judgment is required because the evidence establishes (1) the "warranty"
document was not part of the basis of the bargain between Deere and Hughes, (2) Hughes
did not read or rely on the "warranty" document, and (3) Hughes did not expect Deere to
cover any damage to the cotton stripper caused by the fire.

D.    Deere did not violate the affirmations or promises in its "warranty" – there has been
no finding of product defect.

As noted, Deere promised to "repair or replace, at its option, any part covered under
these warranties **which is found to be defective** in material or workmanship during the
applicable warranty term."  Appx. at 001 (Ex. A) (emphasis added).  But there has been no
finding that the cotton stripper or its components are defective and plaintiff has produced
no competent evidence, through expert testimony or otherwise, to support a finding of
defect.  To prevail on a product defect claim, a plaintiff must demonstrate that a defect
existed **when the product left the manufacturer.** TEX. PATTERN JURY CHARGES 71.3
(manufacturing defect) and 71.4 (design defect); *Ford Motor Co. v. Ridgway*, 135 S.W.3d
598, 600 (Tex. 2004); *Travelers Lloyds Ins. Co. v. All-Glass Aquarium Co., Inc.,* 3:12-CV-
3635-L, 2014 WL 222356, at \*6 (N.D. Tex. Jan. 17, 2014).  Plaintiff attempts to make this
showing in two ways: (1) through circumstantial evidence that the cotton stripper "failed

within 10 hours of use,"[5] ECF No. 1 at ¶ 17, and (2) through the testimony of their experts, Mark Whatley and Steven Hamers.[6]   But neither constitutes competent evidence that a product defect caused the fire.

1. *The circumstances do not warrant an inference of defect.*

Plaintiff claims the mere occurrence of the fire is sufficient circumstantial evidence of defect because the cotton stripper "failed within 10 hours of use."  ECF No. 1 at ¶ 17.[7] This Court has acknowledged that the failure of a new or nearly new product can, under certain circumstances, warrant an inference of defect, but gave clear guidance regarding those circumstances:

> … an **inference of a defect is appropriate only if the particular failure at issue tends to eliminate other potential causes of the product's failure**. The product's failure must be more than merely consistent with a product defect; **it must be the type of failure that would not ordinarily occur in the absence of a defect**.  Thus, **product liability may be inferred from circumstantial evidence without proof of a specific defect if a plaintiff offers evidence that (1) tends to eliminate other possible causes of the property damage,** (2) shows that the product was in the same basic condition at the time of the occurrence as when it left the hands of the defendants, and **(3) the damage is of a type that normally would not have occurred in the absence of a defect in the product.  Significantly, a process of elimination is an acceptable methodology for scientific and engineering experts.**

---

[5]  Although plaintiff alleges the fire occurred when the cotton stripper had been operated less than ten hours, the evidence demonstrates there were less than five hours of operation when the fire occurred.

[6] Deere will file motions to exclude the testimony of Hamers and Whatley and hereby incorporates the argument contained in those motions as if fully set forth herein pursuant to Federal Rule of Civil Procedure 10(c).  Hamers' deposition was cancelled because of a death in his family and is now scheduled for August 10, 2020. Deere will file the motions to exclude the testimony of Hamers and Whatley (their testimony is interrelated) shortly after it receives the transcript of Hamers' deposition.

[7] *See* note 5.

*Shafer*, 2010 WL 8757823, at *4 (internal citations omitted) (emphasis added). Here, fire cannot support an inference of defect because plaintiff's own expert admits (1) fires occur in cotton strippers and other agricultural equipment even when there is no product defect, and (2) it is not possible to eliminate other possible causes of the fire.[8]

Fires can occur on harvesting equipment (even when new) when there is no product defect.  Plaintiff's fire cause and origin expert, Mark Whatley, admits a fire in harvesting equipment such as the cotton stripper – even after just a few hours of operation – does not mean there was a defect in the equipment:

> Q. Are you familiar with – I know this is – you haven't done a lot of harvesting equipment.  But are you familiar with the idea that fires are things that do occur on harvesting equipment?
> A. Yes.
> Q. All right.  They can occur because a lot of the crops that are harvested themselves are flammable.  Is that right?
> A. Yes.
> Q. And so there could be a number of causes of a fire on a piece of harvesting equipment.  True?
> A. Yes.
> Q. **And the fact that there's a fire doesn't mean that it occurred because there was something wrong with the equipment.  You agree with that.  Right?**
> A. **That's – that's true.**
> Q. **Okay. And the fact that there's a fire after a couple of hours of operation doesn't mean there's something wrong with the equipment. You have to go in and do a fire cause analys [sic] -- cause and origin analysis to make that determination.**
> A. **Yes**.

Appx. at  016-017 (Ex. C at 16:24-17:20). Cade Owen, an employee of Hurst Farm Supply, offered similar testimony:

---

[8] The causation argument is discussed in detail below in Section E of this Brief.

Q.      Okay.  Are you familiar with the idea that fires are things that do happen on harvesting equipment?

A.      That is correct.

Q.      And a lot of times the crops that are harvested are volatile; is that true?

A.      That's true.

Q.      **Are there a number of possible causes of a fire involving harvesting equipment?**

A.      **There is.**

Q.      **Does the fact that a fire happens mean there was something wrong with the equipment?**

A.      **No, sir.**

Q.      **Does the fact that a fire happened after a couple of hours of operation mean there is something wrong with the equipment?**
        MR. TAYLOR:  Objection, form, foundation.

**A.      No, sir.**

Appx. at 043 (Ex. D at 28:8-24).  Hughes also testified that fires are a well-known danger associated with such harvesting equipment and identified several causes of fire unrelated to a product defect.   Appx. at 003-004 (Ex. B at 39:12-42:4; 44:7-12).   Because the evidence establishes a fire could occur in the cotton stripper absent defect, plaintiff cannot rely on an inference of defect to avoid summary judgment.  *Shafer*, 2010 WL 8757823, at *4.

   2. *Hamers' theory is not reliable and constitutes no evidence of defect.* [9]

   Steven Hamers (plaintiff's product defect expert) contends that sparks produced from metal to metal contact in the cotton stripper's cleaner caused the fire.  Appx. at 052-053 (Ex. E at 9).  He bases this theory on: (1) the absence of five bolt heads that secured saw tooth blades to a rotating drum, and (2) "slight impact marks" on the doffer.  *Id.; see also* Appx. at 0024 (Ex. C at 61:21-62:3).  Hamers speculates metal to metal contact was

---

[9] *See* note 6.

possible because "the saw tooth blades were loose due to the fact that the screws were overtightened when originally installed at the factory." Appx. at 052-053 (Ex. E at 9). Hamers' testimony is not sufficient to create a fact issue regarding the defect issue because it is not based on a reliable foundation.[10]

Hamers' conclusion that the bolt heads were missing when the cotton stripper left the factory is contradicted by the testimony of Hurst Farm Supply employee Cade Owen. Owen was dispatched to inspect the cotton stripper the morning of the subject fire because the cotton stripper experienced a fire the previous day. Appx. at 006-009 (Ex. B at 56:4-59:11; 60:13-61:1; 64:4-10; 64:16-65:13).[11] Owen, assisted by Hughes, visually inspected each bolt in the cotton stripper with a flashlight, confirmed there were no missing bolt heads, and testified that the bolts were in "pristine" condition. *Id*.; *see also* Appx. at 044 (Ex. D at 34:17-21); Appx. at 046-047 (Ex. D at 44:6-14; 46:1-18). Owen also testified it is common for bolt heads to break off during operation and that he sees broken bolt heads on almost every drum he inspects. Appx. at 048-049 (Ex. D at 57:3-18; 66:24-67:1). Because the inspection of the cotton stripper confirmed the bolt heads were present the morning of the subject fire, plaintiff's claim that the cotton stripper was defective (i.e., that the bolt heads were missing) when it left Deere's possession fails as a matter of law.

Hamers' theory is also undermined by the testimony of plaintiff's cause and origin expert, Mark Whatley. When Whatley examined the cotton stripper's cleaner, he did **not**

---

[10] *See* note 6.
[11] Hughes and his farm hand were able to extinguish the fire that occurred on October 23, 2017. *See* Appx. at 007 (Ex. B at 58:20-59:6).

observe the metal-on-metal damage that would occur if missing bolt heads allowed the saw teeth to hit the doffer.  Appx. at 031 (Ex. C at 94:17-24).  Nor did Whatley observe any fire patterns or other physical evidence to support the position that the fire originated in the cleaner.  Appx. at 024 (Ex. C at 63:17-20, 64:9-13).   Whatley does not know why the bolt heads were missing and is not aware of any evidence they were missing when the cotton stripper left Deere's possession.  Appx. at 025 (Ex. C. at 71:6-25); Appx. at 031 (Ex. C at 95:6-13).  And, as discussed below, Whatley could not eliminate the possibility that the fire originated in the cotton stripper's header – as opposed to the cleaner where the allegedly missing bolt heads were located – because plaintiff failed to preserve the header in its post-fire condition.[12]  Nevertheless, Whatley accepts Hamers' opinion at face value with no independent analysis.  Appx. at 024 (Ex. C at 62:22-63:9); Appx. at 030-032 (Ex. C at 92:1-5; 94:4-8; 96:10-14; 98:17-99:3); Appx. at 040 (Ex. C at 174:4-23).[13]

E.     The fire was not proximately caused by Deere's failure to comply with express warranty.

Deere is also entitled to summary judgment because plaintiff has produced no evidence that could support a finding that the fire was caused by missing bolt heads in the cotton stripper's cleaner.  To evaluate plaintiff's claim, it is necessary to consider both the cause (precipitating factor) and origin (initial location) of the fire.  Plaintiff's cause and origin expert, Mark Whatley, acknowledges there are two areas of the cotton stripper where

---

[12] Deere has filed a motion for sanctions for the spoliation of evidence and incorporates the argument contained in that motion as if fully set forth herein pursuant to Federal Rule of Civil Procedure 10(c).

[13] *See* note 6.

the fire could have originated – the header and the cleaner.  *See* Appx. at 032-033 (Ex. C at 100:16-19; 101:11-17); Appx. at 036 (Ex. C at 133:22-25).[14]  Whatley has also identified numerous possible causes of a fire in the cotton stripper independent of a defect.  Appx. at 028 (Ex. C at 81:1-82:18). Deere is entitled to summary judgment because plaintiff cannot eliminate the possibility that (1) the fire originated in the cotton stripper's header compartment or that (2) the fire was caused by something other than metal to metal contact due to missing bolt heads in the cleaner compartment.  *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 583-4 (Tex. 2006) (expert testimony that design defect is producing cause of fire is insufficient to preclude summary judgment where it fails to eliminate other possible sources for fuel or ignition).

The cotton stripper is made up of several major components including, from front to back, (1) the header, which brings the cotton into the machine; (2) the cleaner, where the cotton is stripped off the husk; (3) the accumulator, where the cleaned cotton is accumulated, and (4) the baler, where the accumulated cotton is formed into a round bale of cotton.  Appx. at 018 (Ex. C. at 27:12-28:3) (process).  Hamers contends the fire originated in the cleaner because five bolt heads were missing in the cleaner when he inspected the cotton stripper.[15]  Whatley (plaintiff's cause and origin expert) accepts Hamers' conclusion regarding the cause and origin of the fire at face value based on nothing more than a consultation with Hamers.[16]  Whatley has performed no testing or

---

[14] *See also* Appx. at 019 (Ex. C at 42:2-24)  Appx. at 023 (Ex. C at 58:11-20); Appx. at  027-029 (Ex. C. at 77:22-78:7; 84:3-7; 84:16-24; 86:11-24; 87:11-16); Appx. at 032 (Ex. C at 99:11-100:3).
[15] *See* note 6.
[16] *Id*.

independent analysis to evaluate Hamer's opinion that the fire originated in the cleaner due to defective bolt heads.[17]   Whatley's testimony constitutes no evidence of causation because (1) it is not based on a reliable foundation and (2) he admittedly cannot eliminate other possible causes and origins of the fire.

The National Fire Protection Association ("NFPA") is a nonprofit organization that seeks to reduce the burden of fire and other hazards on the quality of life by providing and advocating consensus codes and standards, research, training and education. (http://www.nfpa.org/about-nfpa)  The NFPA periodically issues guidelines regarding fire investigation widely accepted by fire investigators and considered "the Bible" of fire investigation.  *Babick v. Berghuis*, 650 F.3d 571, 580 (6th Cir. 2010) (dissent).  Whatley agrees NFPA 921 is widely recognized as authoritative and establishes the methodology followed by cause and origin investigators.  Appx. at 015 (Ex. C at 11:1-13).  And he acknowledges NFPA 921 requires investigators to determine cause and origin by identifying all possible causes of a fire and eliminating all but one cause:

> Q.   Okay.  And it says -- it goes on to say a critical question -- is, "Are there other origin hypotheses that are consistent with that data?"  The investigator should document the facts that support the origin determination **to the exclusion of all other potential origins**.· Right?
> A.   Yes.

Appx. at 036 (Ex. C at 136:15-20) (emphasis added); *see also* Appx. at 028 (Ex. C at 83:9-12); Appx. at 031-032 (Ex. C at 95:17-96:9; 99:11-100:3).

---

[17] *Id.*

So Whatley cannot reliably establish that the fire originated in the cleaner unless he eliminates the possibility that the fire originated in the header. But Whatley cannot eliminate that possibility because the header was not preserved in its post-fire condition.[18] Whatley testified that the header is a "very important" piece of evidence he wanted to inspect, but that it was not available for inspection along with the cotton stripper.  Appx. at 023 (Ex. C at 58:11-20; 59:8-19); Appx. at 026 (Ex. C at 74:15-25).   He admits the header cannot be eliminated as the origin of the fire because it was not available for inspection:

> Q.   So when you inspected – did your initial inspection, was there anything that allowed you to eliminate the header as a potential origin of the fire?  Since you couldn't actually inspect the header.
> A.   Not specifically.
> Q.   And when you say "Not specifically" – is there something generally or just – I mean – if that's a potential origin, that's a hypothesis that needs to be eliminated**.  You didn't have any evidence to allow you to eliminate that when you did the initial  inspection.**
> A.   **Correct.**
> Q.   **True?**
> A.   **Right.**

Appx. at 028 (Ex. C at 84:3-15); *see also* Appx. at 23 (Ex. C at 58:11-20); Appx. at 26 (Ex. C at 75:1-6; 76:11-15).  Whatley openly acknowledges that "the problem we had – or I had in this case is simply that we're dealing with a limited amount of data and evidence.  We don't have the header."  Appx. at 037 (Ex. C at 137:2-9).

Although Whatley did not inspect the header before writing his report, his report highlights a photograph of what he described as "thermally-induced discoloration" where

---

[18] *See* note 12.

the header connects to the cotton stripper.  Appx. at 054-055 (Ex. F at Figure 9); Appx. at 020 (Ex. C at 48:2-14); Appx. at 037 (Ex. C at 138:8-139:9).  Whatley admits this type of thermally induced-damage is "potential evidence" that the origin of the fire was in the header.  Appx. at 022-023 (Ex. C at 56:17-57:1). But Whatley now believes the "thermally induced discoloration" identified in his report was caused by leaking hydraulic fluid. Appx. at 20-21 (Ex. C at 48:25-49:15; 50:22-51:5; 52:8-12). He concludes this because he observed leakage in a hydraulic connection when he inspected the header in May of 2020 – over 2 ½ years after the subject fire.  Appx. at 020 (Ex. C at 48:15-24).  But he acknowledges the condition of the header changed drastically between the time of the fire and the inspection in May of 2020 – it had been through two owners, harvested thousands of acres and had been repainted. Appx. at 026-027 (Ex. C at 76:16-77:14). So he cannot say that the leak existed at the time of the subject fire. And Cade Owen, the Hurst technician who inspected the machine after the initial fire, testified that he sees hydraulic fluid on green Deere paint daily, that it is clear and shiny, and that discoloration was not caused by hydraulic fluid.  Appx. at 044-045 (Ex. D at 35:8-37:21).

Because of the change to the header, Whatley could not eliminate the header as a potential origin of the fire:

> Q.  And -- and when you did eventually get to – to inspect the header -- you talked about how it had been changed.  Painted, had gone through a bunch of use, two -- two owners, thousands of acres of operation. Its – its condition -- had been material [sic] altered.  **So I -- would you agree with me that even when you got to inspect the header -- because of its change, you were not able to eliminate it as a potential origin.**
>
> A.  **Yes**.

*Appx.* at 028 (Ex. C at 84:16-24); *see also* Appx. at 027 (Ex. C at 77:10-78:7); Appx. at 036 (Ex. C at 135:21-25); Appx. at  038 (Ex. C at 165:17-23).  Nor has Whatley conducted any testing that would allow him to eliminate the header as a cause of the fire.  Appx. at 033 (Ex. C at 101:11-17).  This Court has ruled that a cause and origin expert's failure to test his theory regarding the failure of a product constituted a "fatal flaw" in his opinion regarding the cause of the fire.  *Shafer*, 2010 WL 8757823, at *5.

Summary judgment is also appropriate because plaintiff cannot rule out the possibility that something other than defective bolt heads caused the fire.  Whatley acknowledges there are numerous reasons that harvesting equipment like a cotton stripper could catch fire that do not involve a defect:

> Q.  … But as part of your analysis in this -- in -- in this case, did you come up with a list of -- or have an  idea of how a fire could start in a cotton picker? Just in general. Like these are the possible ways fires could start in a cotton picker. Did you come up with something like that?
>
> A.  Yes. It -- it really looks at -- **looking at the operation of the machine -- it looks like there's a lot of different ways a fire can start in one of those.**
>
> Q.  Right.
>
> A.  **There's a lot of moving parts. Cotton is a [sic] easily ignited fuel. There's a lot of ventilation.** So yes.
>
> Q.  Right. Cotton itself is pretty flammable. Right?
>
> A.  Yes. Cotton and the -- the dust and trash that is accumulated during its harvest.
>
> Q.  Okay. **One potential cause -- or what could happen was -- you could have a foreign object -- rock or rebar or something that gets in -- when the -- when the -- comes in through the header.** Right?
>
> A.  **Yes.**
>
> Q.  It could ignite the cotton and the cotton would go back and start it that way. That's a potential way –
>
> A.  Yes.
>
> Q.  **Something could be ingested and get into the cleaner. Some rock or foreign object could get into the cleaner and cause some kind of spark in the cleaner area, which might ignite some piece of**

> **cotton, which would then make its way back to the accumulator**. And even if it's a small spark and a small -- little flame -- it could eventually get to the accumulator where there's lots of -- you know, lots of flammable material. It could start that way. Right?

A.   **Yes**.

Q.   Okay. And then, of course, you -- you could have **some spark occurring in the actual accumulator or the baler itself. Something could get in there and cause a spark somehow. Some foreign object could get in there**.

A.   **Yes. I think if -- if a foreign object got in there -- that at least would have to be explored as potential.**

Appx. at 028 (Ex. C at 81:1-82:18) (emphasis added); *see also* Appx. at 034-035 (Ex. C at 108:16-109:9 (foreign object, such as rock or rebar, could become lodged in header or cleaner);[19] 109:17-25 (same)).  Because Whatley cannot eliminate other possible causes of the fire, such as a foreign object lodged in the header, he does not have a reliable basis for concluding that the fire was caused by missing bolt head in the cotton stripper's cleaner.[20]

Summary judgment is required because plaintiff cannot rule out the possibilities that (1) the fire originated in the header, or (2) something other than a product defect caused the fire.  *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837 (Tex. 2010) (upholding summary judgment because expert's failure to rule out other possible causes of fire rendered his testimony speculative and conclusory); *Mata v. Energy Absorption Sys., LLC*, 01-09-01097, 2011 WL 1233584, at *5 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (upholding summary judgment because officer failed to exclude other possible causes of the fuel tank's rupture); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600-02 (Tex.

---

[19] Whatley later changed his mind and testified while foreign material in the cleaner could cause a fire, he did not see any evidence of foreign material in the cleaner during inspection.  Appx. at 039 (Ex. C at 171:3-172:16).

[20] *See* note 6.

2004) (upholding summary judgment because expert could not rule out part of the fuel system as cause of the fire and no proof of defect when truck left the manufacturer).

F.    <u>The express terms of the "warranty" document limit plaintiff's remedy to repair and replacement of any part found to be defective.</u>

Even assuming plaintiff's theory is correct – that the fire was caused by defective bolt heads in the cotton stripper's cleaner – the "warranty" document expressly limits any relief to the repair and replacement of any defective part.  Appx. at 001 (Ex. A).  Thus, to the extent the Court determines plaintiff may recover from Deere, any recovery should be limited to the repair and replacement of the alleged defective bolt heads.

## IV.
## PRAYER

Defendant Deere & Company asks the Court to grant its motion for summary judgment in its entirety and for any other relief to which the Court believes Deere is entitled.

Respectfully submitted,

GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile

By: */s/ Chris A. Blackerby*
    Chris A. Blackerby
    State Bar No. 00787091
    cblackerby@germer-austin.com
    Ben Zinnecker
    State Bar No. 24066504
    bzinnecker@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DEERE & COMPANY**

**CERTIFICATE OF SERVICE**

On August 7, 2020, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I certify that I have served all counsel of record electronically

and/or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Chris A. Blackerby*
Chris A. Blackerby/Ben Zinnecker

4743060                                          22