IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
|     Defendant. | § | |

**DEERE & COMPANY'S MOTION FOR SPOLIATION SANCTIONS
<u>AND BRIEF IN SUPPORT</u>**

GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile
Chris A. Blackerby
State Bar No. 00787091
<u>cblackerby@germer-austin.com</u>
Ben Zinnecker
State Bar No. 24066504
<u>bzinnecker@germer-austin.com</u>

**ATTORNEYS FOR DEFENDANT
DEERE & COMPANY**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES...........................................................iv

I.       FACTUAL BACKGROUND ................................................... 2

II.     SPOLIATION TIMELINE.................................................... 5

III.    ARGUMENT AND AUTHORITIES ................................... 10

      A.    Nationwide had a duty to preserve the header. ........................... 12

      B.    Nationwide's insured's disposal of the header
            was a bad-faith breach of the duty to preserve........................... 13

      C.    The header sale and subsequent alteration
            prejudices Deere's defense. ........................................... 16

IV.    PROPER SANCTION........................................................ 18

V.     CONCLUSION AND PRAYER............................................ 19

Appendix ..................................................................... (attached)

      1.    July 15, 2020 Deposition of Mark Whatley  ........... APPX.0001-APPX.0017
            (Exhibit A)

      2.    May 19, 2020 Deposition of Cody W. Hughes  ..... APPX.0018-APPX.0039
            (Exhibit B)

      3.    E-mails................................................ APPX.0040-APPX.0043
            (Exhibit C)

      4.    July 17, 2020 Deposition of Russell Martina ......... APPX.0044-APPX.0063
            (Exhibit D)

      5.    E-mails................................................ APPX.0064-APPX.0066
            (Exhibit E)

      6.    E-mails................................................ APPX.0067-APPX.0070
            (Exhibit F)

      7.    E-mails 3/25/20  ....................................... APPX.0071-APPX.0072
            (Exhibit G)

**TABLE OF CONTENTS**

(continued)

**Page(s)**

8.    Trace Landers Declaration ..................................... APPX.0073-APPX.0077
      (Exhibit H)

9.    E-mails.............................................................. APPX.0078-APPX.0080
      (Exhibit I)

10.   E-mails and Letter .................................................. APPX.0081-APPX.0098
      (Exhibit J)

11.   E-mails.............................................................. APPX.0099-APPX.0101
      (Exhibit K)

12.   Letter ................................................................. APPX.0102-APPX.0104
      (Exhibit L)

13.   Large Loss – PSA and Reserve Request ................ APPX.0105-APPX.0107
      (Exhibit M)

14.   E-mail ............................................................... APPX.0108-APPX.0109
      (Exhibit N)

15.   E-mail ............................................................... APPX.0110-APPX.0114
      (Exhibit O)

16.   E-mail ............................................................................. APPX.0115
      (Exhibit P)

17.   E-mail ............................................................... APPX.0116-APPX.0117
      (Exhibit Q)

18.   Deere's First Requests for Production to
      Plaintiff – No. 35 and 37 ....................................... APPX.0118-APPX.0120
      (Exhibit R)

19.   Plaintiff's Responses to Deere's First
      Requests for Production ......................................... APPX.0121-APPX.0124
      (Exhibit S)

20.   E-mails 2/13/20 ................................................... APPX.0125-APPX.00131
      (Exhibit T)

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Sunbeam Corp.*,
    53 F.3d 804 (7th Cir. 1995) ............................................................. 11, 15

*Allstate Tex. Lloyd's v. McKinney*,
    964 F. Supp. 2d 678 (S.D. Tex. 2013) ................................... 12, 13, 14, 16

*Arch Ins. Co. v. Broan-NuTone, LLC*,
    509 F. App'x 453, 458 (6th Cir. 2012) .............................................. 11, 15

*Ashton v. Knight Transp., Inc.*,
    772 F. Supp. 772 (N.D. Tex. 2011) .................................................. passim

*Chambers v. NASCO*,
    501 U.S. 32 (1991) .................................................................................. 10

*Condrey v. Suntrust Bank of Ga.*,
    31 F.3d 191 (5th Cir. 2005) ..................................................................... 10

*Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*,
    683 F.3d 79 (5th Cir. 2012) ..................................................................... 10

*Fishel's Fine Furniture v. Rice Food Mkt.*,
    474 S.W.2d 539 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ dism'd) ........ 11

*Flury v. Daimler Chrysler Corp.*,
    427 F.3d 939 (11th Cir. 2005) ................................................................. 18

*Interstate Fire Ins. Co. v. First Tape, Inc.*,
    817 S.W.2d 142 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ................. 11

*King v. Am. Power Conversion Corp.*,
    181 F. App'x 373 (4th Cir. 2006) ............................................................. 18

*Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*,
    843 F. Supp. 2d 1318 (N.D. Ga. 2011) ........................................ 11, 12, 15

*Lexington Ins. Co. v. Tubbs*,
    No. 06-2847-STA, 2009 WL 1586862 (W.D. Tenn. June 3, 2009) ............... 11, 15

*Marines UPS Ground Freight, Inc. v. Transp. Services, Inc.*,
    No. DR-07-CV-072-AML/CW, 2011 WL 13175785
    (W.D. Tex. Mar. 31, 2011) ............................................................... 14, 16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) .............................................................. 14

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
    236 S.W.3d 765 (Tex. 2007) ........................................................... 10, 11

*Munoz v. Whirlpool Corp.*,
    No. 7:09-CV-096-O, 2012 WL 13018983
    (N.D. Tex. June 19, 2012) .................................................................... 10

*Northern Assur. Co. v. Ware*,
    145 F.R.D. 281 (D. Me. 1993) ............................................................. 12

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*,
    No. 4:09-CV-4039, 2014 WL 651944
    (S.D. Tex. Feb. 19, 2014) ............................................................... 14, 16

*Rimkus Consulting Group, Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010)................................... 10, 12, 16, 18

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ......................................................... 10, 18

*State Farm Fire & Cas. Co. v. Frigidaire, a Div. of Gen. Motors Corp.*,
    146 F.R.D. 160 (N.D. Ill. 1992) ..................................................... 11, 15

*Victor Stanley v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010) ............................................................. 18

*Workman v. AB Electrolux Corp.*,
    No. 03-4195-JAR, 2005 WL 1896246
    (D. Kan. Aug. 8, 2005) ........................................................................ 12

**Other Authorities**

Scott S. Katz & Anne Marie Muscaro,
    *Spoilage of Evidence—Crimes, Sanctions, Inferences, and Torts*,
    29 Tort & Ins. L.J. 51 (1993) ...................................................... 4, 10, 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
|    Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
|    Defendant. | § | |

**DEERE & COMPANY'S MOTION FOR SPOLIATION SANCTIONS
AND BRIEF IN SUPPORT**

This is a subrogation case arising out of a fire involving a John Deere cotton stripper:



*Photo of Exemplar Cotton Stripper from Marketing Brochure*

Nationwide allowed its insured (CWH Farms) to remove and sell a critical piece of evidence in this case—the header on the cotton stripper—before Deere had an opportunity to inspect it.  When Deere finally located and inspected the header in May 2020 (2.5 years after the fire), it had been materially altered from its post-fire condition.

Nationwide's and its insured's spoliation of the evidence has prevented Deere from fully analyzing the cause-and-origin evidence and unfairly hampers Deere's defenses.[1] Deere requests sanctions because of Nationwide's bad faith conduct.

# I.
# FACTUAL BACKGROUND

This case arises out of a fire involving a Deere CS690 Cotton Stripper.  A CS690 Cotton Stripper is unique in the industry because it picks, cleans, and bales cotton—a process that otherwise takes multiple machines and operators.  Appx. at 0004 (Ex. A at 27:6-9).  Cotton flows through the machine from front to back.  Appx. at 0004-0005 (Ex. A at 27:13-28:5, 34:15-19).  It enters the machine through the header at the front and travels rearward into the cleaner which uses saw tooth blades on rotating drums to separate cotton from the hull.  Appx. at 0004-0005 (Ex. A at 27:13-28:5, 36:10-24).  The cotton then continues rearward to the accumulator where it accumulates until there is enough to make a bale.  Appx. at 0004 (Ex. A at 27:13-23).  It then proceeds to the round module builder which creates a round bale of cotton and ejects it out the back of the machine.  *Id.*

Like other equipment that harvests flammable crops, a cotton stripper can catch fire for a variety of reasons.  Appx. at 0002-0003, 0012 (Ex. A at 16:25-17:20, 81:1-82:20); Appx. at 0021-22 (Ex. B at 40:15-41:3, 41:17-42:4).  A common cause is the ingestion of foreign material that causes a spark and ignites cotton.  Appx. at 0006, 0012 (Ex. A at 42:11-24, 81:1-82:20); Appx. at 0022 (Ex. B at 41:17-42:4).  Because cotton flows from

---

[1]   As Deere discusses in its Motion for Summary Judgment filed with this Motion, Plaintiff's failure to preserve and eliminate the header as a possible fire origin also means Plaintiff cannot raise a fact issue over whether there was a defect in the cotton stripper that caused the fire.

the header rearwards, it can ignite without causing damage to the machine until reaching the accumulator where cotton accumulates until baling.  Appx. at 0009 (Ex. A at 64:2-8). Because of the hazard associated with fires, Deere provides video and written instructions on what to do if a fire occurs.  Appx. at 0023-24 (Ex. B at 47:8-15, 47:24-49:19).  Dealers also train purchasers on the proper procedures in the event of a fire.  Appx. at 0021, 0023 (Ex. B at 39:12-40:7, 45:7-46:6).

On October 23, 2017, CWH Farms began operating the cotton stripper as a new machine.  Appx. at 0024 (Ex. B at 51:1-9).  After about 2.7 fan hours of operation, Cody Hughes (the owner of CWH Farms) noticed smoke coming from the baler.  Appx. at 0019, 0025, 0027 (Ex. B at 11:18-12:10, 58:13-18, 65:14-24).  Hughes ejected the burning cotton and extinguished the fire before any damage occurred.  Appx. at 0025 (Ex. B at 58:13-19). He then asked the dealer (Hurst Farm Supply) to inspect the machine for signs of a malfunction.  Appx. at 0025 (Ex. B at 60:13-21).  The dealer inspected the cotton stripper and found nothing wrong with it.  Appx. at 0025-0027 (Ex. B at 60:20-23, 63:10-24, 64:4-10, 64:16-65:13, 66:14-19).

On October 24, 2017, Hughes again used the cotton stripper.  Appx. at 0027 (Ex. B at 66:14-19, 67:13-22).  After approximately 4 hours the subject fire occurred.  Appx. at 0028 (Ex. B at 70:15-71:2).  This time the burning bale of cotton broke while Hughes attempted to eject it and he could not extinguish the fire.  *Id.* (Ex. B at 69:19-71:15). Hughes immediately contacted Nationwide and filed a claim.  Appx. at 0030 (Ex. B at 88:9-89:25).  Initially Hughes wanted to repair the cotton picker.  Appx. at 0020 (Ex. B at 29:25-30:15), Appx. at 0029-0030 (Ex. B at 88:9-25, 91:4-92:24).  But Nationwide

declared it a total loss and sought subrogation from Deere.   Appx. at 0030, 0032 (Ex. B at 92:20-94:17, 100:11-14).

During the claims process, a dispute arose between Hughes and Nationwide (through its Large Loss Adjuster Russ Martina) because Nationwide refused to pay for the header.  Appx. at 0045 (Ex. D at 11:4-5); Appx. at 0032-0033 (Ex. B at 100:15-101:9); Appx. at 0041-42 (Ex. C at 3-4).  So – with Nationwide's knowledge and consent – Hughes removed the header from the scene.  Appx. at 0040 (Ex. C at 2); Appx. at 0043 (Ex. D at 43:8-17), Appx.at 0051 (Ex. D at 54:13-18); Appx. at 0037 (Ex. B at 119:7-10).  He then refused to allow an inspection of header and sold it.  Appx. at 0064 (Ex. E at 1); Appx. at 0067 (Ex. F at 1); Appx. at 0057 (Ex. D at 89:22-90:3).  Through third-party discovery, Deere located the header and inspected it in May 2020.  *See* Appx. at 0064-0072 (Exs. E, F & G); Appx. at 0075 (Ex. H at ¶ 9).  By that time, it had gone through 2 more owners, harvested thousands of acres and been repainted and serviced.  Appx. at 0075 (Ex. H ¶ 10).  Because of this material alteration, it made any potential investigation for fire pattern in the header row units impossible, and there is no reliable way to determine the cause and origin of the fire.  Appx. at 0077 (¶ 15); Appx. at 0013 (Ex. A at 103:3-13), Appx. at 0014-0016 (Ex. A at 135:21-25, 140:13-17, 141:9-14).

## II.
## SPOLIATION TIMELINE

The following timeline illustrates both Plaintiff's and Plaintiff's insured's[2] deliberate actions in failing to preserve the header in its post-incident condition:

10/24/17:    The fire occurred.

11/01/17:    Nationwide Large Loss Adjuster Russell Martina instructed Cody Hughes to "not let the dealer take the stripper." Appx. at 0079 (Ex. I at 2). Hughes is a partner with his father in CWH Farms. *See* Appx. at 0019 (Ex. B at 11:18-12:10). In his E-mail to Hughes, Martina acknowledged Nationwide's duty to preserve the evidence. Appx. at 0046 (Ex. D at 17:9-18:2).

11/03/17:    Nationwide Subrogation Specialist Robert Opalenik notified Deere of the incident. Appx. at 0081-0098 (Ex. J).

11/05/17:    Deere sent Opalenik a written request to "preserve the machine"—including the header—"at the scene" and warning against the consequences "if the equipment, fire or accident scene or any evidence regarding this matter are disturbed, moved, adjusted, removed and/or tampered with in any way." Appx. at 0100 (Ex. K at 2); *see also* Appx. at 0050 (Ex. D at 52:8-11, 52:21-24); Appx. at 0042 (Ex. C at 3); Appx. at 0033-0034 (Ex. B at 103:12-24, 105:7-15) (header was attached to and part of the cotton stripper during the fire).

11/06/17:    Opalenik responded "understood," Appx. at 0099 (Ex. K at 1), and Deere followed up with a formal preservation letter, Appx. at 0102-0104 (Ex. L).

11/14/17:    No one from Nationwide had inspected the machine itself. Appx. at 0047 (Ex. D at 34:13-35:5). But Nationwide committed to maintaining the cotton stripper as evidence "until the conclusion of the subrogation and possible litigation." Appx. at 0105-0107 (Ex. M); Appx. at 0047 (Ex. D at 35:18-36:7).

---

[2]   As discussed in the following section, a spoliation sanction "would run against the *insurer* [Nationwide] if the insured [CWH Farms] destroyed evidence, as the insurer stands in the shoes of the insured." Scott S. Katz & Anne Marie Muscaro, *Spoilage of Evidence—Crimes, Sanctions, Inferences, and Torts*, 29 Tort & Ins. L.J. 51, 73 (1993) (emphasis in original).

11/17/17:    Hughes told Martina he was removing the header from the cotton stripper, and Martina approved the removal even though it was attached to (and part of) the cotton stripper during the fire.  Appx. at 0042 (Ex. C at 2); Appx. at 0048, 0050-0051 (Ex. D at 43:8-44:1, 52:8-11, 52:21-24, 54:13-18); Appx. at 0037 (Ex. B at 119:7-10).  Martina let Hughes remove the header because Martina decided it was not involved in the fire after looking at some photos and talking to Hughes.  Appx. at 0049, 0052 (Ex. D at 47:19-48:8, 66:9-19).  Martina is not a cause and origin expert; has never operated a cotton stripper; and did not consult with any experts before giving Hughes permission to remove the header from the cotton stripper.  Appx. at 0045, 0049 (Ex. D at 11:13-15, 45:23-46:16).  Hughes told Martina that the header and cotton stripper are "useless without one another," and if "nationwide [*sic*] goes after Deere they will want to see header."  Appx. at 0042 (Ex. C at 3); *see also* Appx. at 0033-0034 (Ex. B at 103:12-24, 105:7-15) (discussing conversation with Martina).

11/27/17:    Martina acknowledged Nationwide's potential litigation against Deere.  Appx. at 0108 (Ex. N at 1).

12/09/17:    Hughes told Martina "[t]he fire could have easily started in [the] header" because of "a bearing going out or a cross auger clearance issue."  Appx. at 0111 (Ex. O at 2); *see also* Appx. at 0036 (Ex. B at 116:15-24).  Martina never followed up to see whether there was any validity to what Hughes was saying.  Appx. at 0052 (Ex. D at 67:14-21).

12/11/17:    Hughes acknowledged to Martina there was "a burnt paint spot on the chute of the stripper which is where the header is attached."  Appx. at 0110 (Ex. O at 1); *see also* Appx. at 0037 (Ex. B at 120:4-22); Appx. at 0054 (Ex. D at 75:12-17, 76:1-14) (Hughes believed header was damaged "as part of the fire").

    Martina learned about an inspection to take place two days later on December 13, 2017.  Appx. at 0056 (Ex. D at 81:16-82:2, 82:4).  Martina also learned Hughes would allow Deere (but not Nationwide) to inspect the header.  Appx. at 0115 (Ex. P); Appx. at 0053 (Ex. D at 69:5-70:20); Appx. at 0035 (Ex. B at 110:4-23).  But Martina did not communicate this to Deere via E-mail and does not recall otherwise passing the information along.  Appx. at 0053 (Ex. D at 71:16-72:11).

12/12/17:    The day before the inspection, with the annotation "Very Important," Martina asked if Nationwide's experts could inspect the header. Appx. at 0065 (Ex. E at 2); Appx. at 0055 (Ex. D at 79:2-8, 79:15-80:3). Hughes declined and told Martina he would sell the header. Appx. at 0064 (Ex. E at 1). Neither Martina nor anyone from Nationwide did anything to prevent Hughes from selling the header. Appx. at 0056, 0060-0061 (Ex. D at 84:2-10, 107:4-109:11); Appx. at 0034-0037 (Ex. B, Hughes Depo. at 105:7-22, 111:9-14, 113:11-15, 119:24-120:3).

12/13/17:    The parties inspected the cotton stripper. Appx. at 0074 (Ex. H ¶ 7). The header was not available. *Id.* ¶ 8. But photos taken during the inspection reveal thermal damage to the paint and charring at the cotton flow duct near the header attachment (*id.* ¶ 7):



*RIMG2016*

12/16/17:    Hughes informed Martina he sold the header (like he said he would). Appx. at 0067 (Ex. F); Appx. at 0057 (Ex. D at 89:22-90:3). Martina took no action to determine who bought it or otherwise locate and preserve it. *Id.* (Ex. D at 90:4-13).

01/03/18:    Hughes asked Martina when he would move the cotton stripper—which was still sitting in a CWH Farms field, exposed to the elements—and pay CWH Farms' storage fee. Appx. at 0116-0117 (Ex. Q). Nationwide did not pay CWH Farms' storage fee and did not move the cotton stripper. *Id.* The cotton stripper was never moved and, over two years later, still sits in the same field. Appx. at 0057-0058 (Ex. D at 91:8-15, 94:6-13). Martina acknowledged it is "not a good idea" to leave the cotton stripper out in the field, because something could happen to the evidence. Appx. at 0059 (Ex. D at 101:5-17).

11/12/19:    In discovery, Deere requested "correspondence between you [Nationwide] and/or CWH Farms regarding the incident in question" and "your [Nationwide's] claim file(s) for the incident in question."  Appx. at 0120 (Ex. R at Nos. 36 & 37).

02/03/20:    The parties coordinated a second joint inspection to take place on February 18, 2020.  Appx. at 0131 (Ex. T).

02/10/20:    Deere asked to inspect the header as part of the second joint inspection since the header was not available during the December 2017 inspection.  Appx. at 0129 (Ex. T at 5).  Deere did not know Hughes sold the header over two years earlier.  On February 13, Nationwide's attorney told counsel for Deere that CWH Farms was using the header on another machine.  Appx. at 0128 (Ex. T).

02/17/20:    Nationwide notified Deere that the header would not be available for inspection, but did not tell Deere that Hughes had sold the header in December 2017.  Appx. at 0125 (Ex. T).

02/18/20:    The parties conducted the second inspection.  Appx. at 0074 (Ex. H ¶ 8).  The header was not available.  *Id.*  The cotton stripper was still in the field and had not moved.  *Id.*  There was thermal damage at the cotton feed area where the header attaches (*id.*):



P2181485

03/25/20:    Through correspondence from Hughes, Deere learned Nationwide allowed the header to be sold.  Appx. at 0071-0072 (Ex. G).  Hughes' correspondence contradicts Nationwide's multiple representations to Deere that, while the header was not available during the December 2017 and February 20 inspections, CWH Farms had the header but was using it on another machine.  Appx. at 0074 (Ex. H ¶¶ 7-8); Appx. at 0125-0128 (Ex. T).  Deere immediately attempted to locate the header.

03/26/20:    Deere located the header and worked to schedule an inspection.

05/27/20:   Deere participated in a third, joint inspection of the header.  Appx. at 0075 (Ex. H ¶ 9).  During the inspection, the header was installed on a different CS690 cotton stripper with a different owner (Mike Henson).  *Id.* ¶ 10. Henson is the third owner of the header.  *Id.*  Henson purchased the header in September 2019 and harvested 3000+ acres with it.  *Id.*  Western Equipment serviced the header before Henson purchased it.  *Id.*

The inspection revealed the inside of each row unit—including the row unit sheet metal, augers, and framework—had been repainted.  *Id.*


*P5270034*


*P5270097*

Typically, during harvest, paint will wear off in the areas shown in the photos above.  *Id.* ¶ 11.

There was also green paint overspray on some of the bearing covers and hardware.  Appx. at 0076 (Ex. H ¶ 12).



*P5270034*


*P5270097*

Because the unit had been used and repainted, Deere could not document, observe, or photograph the header in its original condition. *Id.* ¶ 13.

06/12/20:    Approximately six months after the deadline, Plaintiff finally responded to Deere's discovery requests. *See* Appx. at 0124 (Ex. S). Plaintiff produced written correspondence between Nationwide and CWH Farms showing Nationwide knew, in 2017, that CWH Farms sold the header. Appx. at 0122-0123 (Ex. S at Nos. 36 & 37); Appx. at 0064 (Ex. E at CWH000159); Appx. at 0067 (Ex. F at CWH000155).

## III.
## ARGUMENT AND AUTHORITIES

Federal law governs spoliation in diversity cases. *Munoz v. Whirlpool Corp.*, No. 7:09-CV-096-O, 2012 WL 13018983, at *2 (N.D. Tex. June 19, 2012) (O'Connor, J.) (citing *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)). The court has the inherent power to sanction a spoliating party. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 772, 799 (N.D. Tex. 2011) (citing *Chambers v. NASCO*, 501 U.S. 32, 44 (1991) & *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010)). "Spoliation is the 'destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Ashton*, 772 F. Supp. at 799 (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

In insurance subrogation cases like this one, "'the insurer stands in the shoes of the insured.'" *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012) (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). The insurer's claims are therefore subject to any defenses a third party has against the insured. *Cont'l Cas. Co.*, 683 F.3d at 85 (quoting *Mid-Continent Ins. Co.*, 236 S.W.3d

at 774); *see also, e.g., Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (release); *Fishel's Fine Furniture v. Rice Food Mkt.*, 474 S.W.2d 539, 541 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ dism'd) (statute of limitations).

In a subrogation action, a spoliation sanction "would run against the *insurer* if the insured destroyed evidence, as the insurer stands in the shoes of the insured." Scott S. Katz & Anne Marie Muscaro, *Spoilage of Evidence—Crimes, Sanctions, Inferences, and Torts*, 29 Tort & Ins. L.J. 51, 73 (1993) (emphasis in original); *see also, e.g., Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 458 (6th Cir. 2012) (subrogation case:  insurer sanctioned for not preserving evidence under insured's control); *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 805, 807 (7th Cir. 1995) (subrogation case:  insurer sanctioned because it allowed portions of a gas grill at its insured's home to be destroyed); *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, 843 F. Supp. 2d 1318, 1325-26 (N.D. Ga. 2011) (subrogation case:  insured's destruction of wooden pallets (supplied by the defendant) was imputed to insurer); *State Farm Fire & Cas. Co. v. Frigidaire, a Div. of Gen. Motors Corp.*, 146 F.R.D. 160, 163 (N.D. Ill. 1992) (subrogation case:  insurer sanctioned because it "allowed [insured] to willfully dispose of the dishwasher" at issue in the case); *Lexington Ins. Co. v. Tubbs*, No. 06-2847-STA, 2009 WL 1586862, at *3 (W.D. Tenn. June 3, 2009) (subrogation case:  insurer "stepped into the shoes of the hotel [insured] with respect to any claim against Defendant" and was therefore sanctioned for the insured's disposal of a chair and lamp at a fire scene).

A party engages in sanction-worthy spoliation when there is "[A] a duty to preserve the information, [B] a culpable breach of that duty, and [C] resulting prejudice to the innocent party." *Ashton*, 772 F. Supp. 2d 800 (citing *Rimkus*, 688 F. Supp. 2d at 612, 615-16). "Sanctions for spoliation of evidence may include 'awarding attorney fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence or expert testimony, striking pleadings, entering a default judgment, and dismissing the case entirely.'" *Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 683 (S.D. Tex. 2013) (quoting *Ashton*, 772 F. Supp. 2d at 801). If bad faith conduct led to the spoliation, more severe sanctions are warranted. *Allstate Tex. Lloyd's*, 964 F. Supp. 2d at 683 (citing *Ashton*, 772 F. Supp. 2d at 801).

Hughes' removal and sale of the header, with Nationwide's permission and blessing, satisfies all three spoliation elements. A sanction is necessary to remedy the otherwise irreparable prejudice Deere has suffered by the spoliation of the header.

A.   Nationwide had a duty to preserve the header.

"A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ashton*, 772 F. Supp. 2d at 800 (citing *Rimkus*, 688 F. Supp. 2d at 612). "This duty is heightened for an insurer" like Plaintiff Nationwide, "because it is a sophisticated entity experienced in litigation." *Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246, at *5 (D. Kan. Aug. 8, 2005) (citing *Northern Assur. Co. v. Ware*, 145 F.R.D. 281, 284 (D. Me. 1993)); *accord Erie Ins. Exch. v. Davenport Insulation, Inc.*, 659 F. Supp. 2d 701, 707 (D. Me. 2009); *Kraft Reinsurance Ireland, Ltd.*, 843 F. Supp. 2d at 1326. "Once litigation is reasonably anticipated, a

potential party to that litigation 'must not destroy unique, relevant evidence that might be useful to an adversary.'" *Allstate Tex. Lloyd's*, 964 F. Supp. 2d at 684 (quoting *Ashton*, 772 F. Supp. 2d at 800).

For several reasons, Nationwide and its insured had a duty to preserve the header, a critical piece of evidence in this case:

1.  Martina acknowledged he was aware of Nationwide's duty to preserve the evidence.  Appx. at 0046 (Ex. D at 17:9-18:2).  Both Nationwide and its insured knew the header was part of the cotton stripper on the day of the fire, and the header and the cotton stripper were "useless without one another." Appx. at 0050 (Ex. D at 52:8-11, 52:21-24); Appx. at 0042 (Ex. C at 3); Appx. at 0033-0034 (Ex. B at 103:12-24, 105:7-15).

2.  Nationwide acknowledged it might sue Deere weeks before the header was sold.  Appx. at 0108 (Ex. N at 1).

3.  Deere sent both informal and formal requests to preserve the machine at the scene.  Appx. at 0100 (Ex. K at 2); Appx. at 0102-0104 (Ex. L).  Nationwide responded "understood."  Appx. at 0099 (Ex. K at 1).

4.  Nationwide's insured notified Nationwide that the header was a critical piece of evidence because "[t]he fire could have easily started in [the] header." Appx. at 0111 (Ex. O at 2); *see also* Appx. at 0036 (Ex. B at 116:15-24). Nationwide's insured notified Nationwide there was "a burnt paint spot on the chute of the stripper which is where the header is attached."  Appx. at 0110 (Ex. O at 1); *see also* Appx. at 0037 (Ex. B at 120:4-22); Appx. at 0054 (Ex. D at 75:12-17, 76:1-14) (Hughes believed header was damaged "as part of the fire").

Nationwide had a duty to preserve the evidence it allowed its insured to dispose of.

*See Allstate Texas Lloyd's*, 964 F. Supp. 2d at 684.

B.  <u>Nationwide's insured's disposal of the header was a bad-faith breach of the duty to preserve.</u>

A party is entitled to sanctions upon a "bad faith" showing.  *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir.2003).  The hallmark of bad faith "'is advantage-seeking

behavior by the party with superior access to information necessary for the proper administration of justice.'" *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-CV-4039, 2014 WL 651944, at *10 (S.D. Tex. Feb. 19, 2014) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011)).  Federal courts in Texas have found bad faith under the following circumstances:

- In a home fire case, destruction of fire-damaged samples at the direction of an insurance adjuster when the party seeking spoliation learned of the destruction from a third party.  *Allstate Tex. Lloyd's*, 964 F. Supp. 2d at 682, 684-85.

- In a truck accident case, failure to preserve Qualcomm communication messages from the accident date despite a request to produce and preserve them.  *Ashton*, 772 F. Supp. 2d at 802.

- In a misappropriation-of-trade-secrets case, destruction of relevant evidence, then concealing the destruction after-the-fact.  *Quantlab Techs. Ltd. (BGI)*, 2014 WL 651944 at *14-15.

- In a truck accident case, destruction of truck repair records requested within the document retention period.  *Marines UPS Ground Freight, Inc. v. Transp. Services, Inc.*, No. DR-07-CV-072-AML/CW, 2011 WL 13175785, at *7 (W.D. Tex. Mar. 31, 2011).

Nationwide's and its insured's actions demonstrate a bad faith disposal of the header.  Over a month before Hughes sold the header, Deere asked Nationwide to preserve the machine in its current location.  Appx. at 0100 (Ex. K at 2); Appx. at 0102-0104 (Ex. L). Nationwide responded "understood."  Appx. at 0099 (Ex. K at 1).

Hughes also knew the header was a crucial piece of evidence and attempted to use it as leverage in his dispute with Nationwide.  Appx. at 0042 (Ex. C at 3); Appx. at 0110-0011 (Ex. O at 1-2); Appx. at 0033-0035 (Ex. B at 103:12-24, 105:7-18, 110:4-23); Appx. at 0054 (Ex. D at 75:12-17).  On multiple occasions Hughes told Nationwide that Deere

would want to inspect the header but refused to allow an inspection until Nationwide paid his claim.  Appx. at 0110-0111, 0114 (Ex. O at 1-2, 5); Appx. at 0064-0065 (Ex. E at 1-2); *see also* Appx. at 0033 (Ex. B at 103:12-24).  Despite acknowledging Deere's request to preserve the evidence, Nationwide then explicitly approved removal of the header from the machine (Appx. at 0041-0042 (Ex. C at 2-3)), and tacitly approved its disposal (Appx. at 0064 (Ex. E at 1); Appx. at 0067 (Ex. F at 1).  Since Nationwide stands in the shoes of its insured, CWH Farm's intentional disposition of the header runs against (and is imputed to) Nationwide.  Katz, 29 Tort & Ins. L.J. at 73; *Arch Ins. Co.*, 509 F. App'x at 458; *Sunbeam Corp.*, 53 F.3d at 805, 807; *Kraft Reinsurance Ireland, Ltd.*, 843 F. Supp. 2d at 1325-26; *Frigidaire*, 146 F.R.D. at 163; *Tubbs*, 2009 WL 1586862 at *3.

Deere repeatedly requested to inspect the header, and the header was never available.  *See, e.g.,* Appx. at 0074 (Ex. H ¶¶ 7-8), Appx. at 0125-0131 (Ex. T).  Nationwide's insured told Nationwide in December 2017 (before the header sale) that Deere could inspect the header.  Appx. at 0115 (Ex. P); Appx. at 0053 (Ex. D at 69:5-70:20); Appx. at 0035 (Ex. B at 110:4-23).  But Nationwide never communicated this to Deere (Appx. at 0053 (Ex. D at 71:16-72:11)) and never told Deere that CWH Farms sold it.  Instead, even into February 2020, Nationwide consistently indicated to Deere that CWH Farms still had the header, but it was in use on another machine.  Appx. at 0125-0131 (Ex. T).  It was not until March 25, 2020 that Deere learned, from Nationwide's insured, that Nationwide allowed the header to be sold.  Appx. at 0071-0072 (Ex. G).  The December 2017 header-disposal E-mails Nationwide's insured sent were responsive to Deere's November 2019 discovery requests, but Nationwide withheld the E-mails until

June 2020—almost six months after the response deadline, and after Nationwide sent contradictory E-mails that CWH Farms still had the header.  Appx. at 0120 (Ex. R at Nos. 36 & 37); Appx. at 0122-0123 (Ex. S at Nos. 36 & 37); Appx. at 0064 (Ex. E at CWH000159); Appx. at 0067 (Ex. F at CWH000155).

The actions of Nationwide and its insured outlined above demonstrate the "advantage-seeking behavior" justifying a bad-faith finding (*Quantlab Techs. Ltd. (BGI)*, 2014 WL 651944 at *10 (quotation omitted)):

- As in *Allstate Texas Lloyd's*, 964 F. Supp. 2d at 682, 684-85, Hughes removed and then sold the header with Nationwide's approval.  After Nationwide consistently said CWH Farms still had the header, Deere learned of its destruction from Hughes.

- As in *Ashton*, 772 F. Supp. 2d at 802, and *Marines UPS Ground Freight*, 2011 WL 13175785 at *7, Nationwide authorized the removal and sale of the header after Deere made multiple requests for Nationwide to preserve the machine.

- As in *Quantlab Techs. Ltd. (BGI)*, 2014 WL 651944 at *14-15, Nationwide indicated CWH Farms still had the header years after it had been sold and withheld the Nationwide-CWH Farms communications showing the sale.

Deere requests the Court find Nationwide spoliated the header in bad faith.

C.    The header sale and subsequent alteration prejudices Deere's defense.

If the altered evidence is relevant to the case, then the alteration is prejudicial. *Ashton*, 772 F. Supp. 2d at 801 (citing *Rimkus*, 688 F. Supp. 2d at 616).  "[L]ost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Ashton*, 772 F. Supp. 2d at 801 (quotation omitted).  "Generally, the prejudice element is satisfied

where a party's ability to present its case or to defend is compromised." *Id.* (quotation omitted).  The header sale and alteration prejudice Deere.

The header is a critical piece of evidence regarding the cause and origin of the fire. Appx. at 0077 (Ex. H ¶ 15).  It was part of the cotton stripper when the fire occurred.  *Id.* And there is thermal damage where the header attaches to the cotton stripper.  *Id.*  But Deere could not inspect this critical piece of evidence until approximately 2.5 years after the fire.  *Id.*  During that time, it changed ownership twice.  *Id.*  And Henson (third owner) reported that the dealer rebuilt or serviced it before his purchase in late 2018.  *Id.*  Henson also reported that he harvested over 3000 acres with the header in 2019.  *Id.*  By the time the header was made available for inspection in May 2020, Henson had repainted the inside of each row unit of the header, including the frame, sheet metal, and augers.  *Id.*  The repainting materially altered the header and made any potential investigation for fire pattern in the header row-units impossible.  *Id.*

Mark Whatley, Plaintiff's cause-and-origin expert, concedes a header inspection is important because "[i]t was part of the machine at the time of the fire."  Appx. at 0006 (Ex. A at 41:15-21).  Whatley agrees that a header could have been the origin of the fire through ingestion of foreign materials.  *Id.* (Ex. A at 42:11-43:1).  Thermally-induced damage where the header attaches is potential evidence the fire originated in the header. Appx. at 0007-0008 (Ex. A at 56:6-57:1).  If there were a corresponding burn pattern on the header, Whatley would want to inspect it.  Appx. at 0006, 0008, 0010 (Ex. A at 43:23-44:4, 57:2-12, 74:9-75:6).  But Nationwide's and its insured's actions deprived Deere of that opportunity because the header had been materially altered when Deere first inspected

it in May 2020.  Appx. at 0010-0011 (Ex. A at 76:17-77:14, 77:22-25).  The alteration makes eliminating the header as a potential fire source impossible.  Appx. at 0013-0016 (Ex. A at 103:3-13, 135:21-25, 140:13-17, 141:9-14).  As a result, Plaintiff cannot prove a defect caused the fire and Deere cannot prove that it didn't.

## IV.
## PROPER SANCTION

In fashioning the proper sanction, "the court must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Ashton*, 772 F. Supp. 2d at 804 (citing *Victor Stanley v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533-34 (D. Md. 2010)).  Dismissal is an appropriate sanction when "the spoliation or destruction of evidence resulted in irreparable prejudice and no lesser sanction would suffice."  *Rimkus*, 688 F. Supp. 2d at 644 (internal quotation marks omitted).  When a manufacturer is deprived of access to an allegedly defective product, no lesser sanction removes the irreparable prejudice to the manufacturer's ability to defend itself.  *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943, 947 (11th Cir. 2005) (prejudice to the manufacturer-defendant manufacturer from disposal of the vehicle was "incurable by any sanction other than dismissal"); *Silvestri*, 271 F.3d at 594-95 (dismissal was appropriate when disposal of the vehicle prevented "access to the only evidence from which it could develop its defenses adequately"); *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376-79 (4th Cir. 2006) (affirming dismissal sanction when an insurer authorized disposal of an Uninterrupted Power Source manufactured by the defendant).

In *Ashton*, 772 F. Supp. 2d at 804-05, the court authorized the severe sanction of striking the defendants' pleadings and defenses to liability.  As discussed in the previous section, Plaintiff's and its insured's bad-faith actions are like the defendants' in *Ashton* and warrant the most severe sanction of case dismissal.  Alternatively, Deere requests the Court exclude the testimony of Plaintiff's experts or an adverse inference.

## V.
## CONCLUSION AND PRAYER

Plaintiff and its insured knew they needed to preserve the header but didn't.  Plaintiff's and its insured's deliberate disposal of the header prejudices Deere's defenses and warrants sanctions.  Deere asks this Court to dismiss this case with prejudice.  In the alternative, it requests the exclusion of the testimony of Plaintiff's experts or an adverse inference, and for any further relief to which the Court believes Deere is justly entitled.

Respectfully submitted,


GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile

By: */s/ Ben Zinnecker*_____
    Chris A. Blackerby
    State Bar No. 00787091
    cblackerby@germer-austin.com
    Ben Zinnecker
    State Bar No. 24066504
    bzinnecker@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DEERE & COMPANY**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), I certify the motion is opposed.  I further certify, on August 7, 2020, I corresponded by email with Plaintiff's counsel David Taylor about the topics in this motion.  An agreement could not be reached for the reasons reflected in the motion above.


*/s/ Ben Zinnecker*_____
Chris A. Blackerby/Ben Zinnecker

## CERTIFICATE OF SERVICE

On August 7, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I certify that I have served all counsel of record electronically and/or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Ben Zinnecker*
Chris A. Blackerby/Ben Zinnecker