IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, as subrogee of CWH FARMS, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.: 4:19-CV-00425-O |
| vs. | § § | |
| DEERE & COMPANY, | § § | |
| Defendant. | § | |

**PLAINTIFF NATIONWIDE AGRIBUSINESS INSURANCE COMPANY a/s/o CWH FARMS' RESPONSE IN OPPOSITION TO DEERE & COMPANY'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGRUOND......................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

  1. Legal Standard for Summary Judgment................................................................................. 5

  2. Summary Judgment Must be Denied Because Deere Admitted to the Existence of the Express Warranty ....................................................................................................................... 5

    a. Deere admitted the existence of the express warranty in discovery................................... 6

    b. Deere's representations were part of the basis of the bargain and Cody Hughes/CWH relied on the representations..................................................................................................... 8

  3. Nationwide Has Provided Sufficient Evidence to Infer a Product Defect that Proximately Caused the Fire to the Subject Stripper ........................................................................................ 9

a. The overtightening of the bolt heads was the proximate cause of the fire to the Subject Stripper .................................................................................................................. 12

b. The opinion of Nationwide's origin and cause expert Mark Whatley is reliable ............. 12

4. The Exclusive Remedy Provided by Deere's Express Warranty Fails of its Essential Purpose and is Unenforceable as a Matter of Law .................................................................................... 16

CONCLUSION .................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Ackermann v. Wyeth Pharm.*, 471 F.Supp.2d 739, (E.D. Tex. 2006), aff'd, 526 F.3d 203 (5th Cir. 2008) ...................................................................................................................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .......................................... 5

*Becker v. Continental Motors, Inc.*, 709 Fed.Appx. 263, 269, 270 (5th Cir. 2017) ... 13, 14, 15, 16

*Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005) ............... 5

*Great American Products v. Permabond Int'l. a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App. – Austin 2002, pet. denied) .............................................. 5, 12

*In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ..................................................... 6, 7

*Mercedes-Benz of N.A., Inc. v. Dickenson*, 720 S.W.2d 844, 854 (Tex. App.--Fort Worth 1986)17

*Minsa Corp. v. SFTC, LLC*, 540 S.W.3d 155, 161 (Tex. App.--Amarillo 2017) ......... 12

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ............................................................ 5

*Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017) ................................................ 12

*Shafer v. LG Electronics U.S.A., Inc.*, 2010 WL 8757823 (N.D. Tex. Sept. 30, 2010)..............
............................................................................................... 9, 10, 11, 13, 16

*Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ............. 15

**Statutes**

Tex. Bus. & Com. Code § 2.313 .................................................................................. 5

Tex. Bus. & Com. Code § 2.719 ................................................................................ 16

**Rules**

Federal Rule of Civil Procedure 30(b)(6) ................................................................. 7, 8

Federal Rule of Civil Procedure 36(a) ...................................................................... 6

Federal Rule of Civil Procedure 36(b) ...................................................................... 6

Federal Rule of Civil Procedure 56(c) ...................................................................... 5

## <u>INTRODUCTION</u>

This case arises out of an October 24, 2017 total loss fire to a brand-new John Deere CS690 Cotton Stripper (the "Subject Stripper") that was owned by Plaintiff's Insured, CWH Farms and its partners, Cody Hughes and Willis Hughes ("Hughes").

On August 7, 2020, Defendant Deere & Company ("Deere") filed a Motion for Summary Judgment on the grounds that "(1) the document plaintiffs allege is a "warranty" does not constitute an express warranty under Texas law; (2) plaintiff misstates the promises Deere makes; (3) plaintiff has no evidence that Cody Hughes relied on an express warranty; (4) plaintiff has no evidence that the cotton stripper was defective; (5) plaintiff has no evidence that a defect in the cotton stripper proximately caused the fire; and (6) the only remedy permitted under the document at issue is repair and replacement of any part found to be defective." [Doc 48, p. 7]

Deere's Motion should be denied for the following reasons:

1. Deere admitted to the existence of the warranty, which covered component parts for defect in workmanship or material. Appx. at 0012 (Ex. A); Appx. at 0019-0020 (Ex. B at 16:17-18:10; 19:10-20:13)

2. There was reliance on the existence of a warranty by CWH Farms while making the purchase of the Subject Stripper.

3. Plaintiff Nationwide Agribusiness Insurance Company ("Nationwide") has provided sufficient evidence to show a defect in the Subject Stripper through five instances of mechanical failures which was the proximate cause of the fire;

4. The remedy Deere provides under its Limited Express Warranty fails of its essential purpose and is unenforceable as a matter of law.

1

## **FACTUAL BACKGRUOND**

Prior to August 7, 2017, CWH Farms sold all its cotton stripping and harvesting equipment to invest in the Subject Stripper. Appx. at 0024 (Ex. C at 14:16-21) On or around August 7, 2017, CWH Farms purchased the Subject Stripper from Hurst Farm Supply, Inc. ("Hurst") in Lorenzo, Texas. Once the purchase was made, the machine was ordered and CWH Farms received all of the paperwork – including the terms of the warranty, when the machine was delivered. Appx. at 0031 (Ex. D at 11:3-17) The limited warranty accompanying the Subject Stripper stated, in part: the warranty is "provided by John Deere to the original purchasers of new Agricultural, Turf and Utility Equipment ("Equipment"), purchased from John Deere or authorized John Deere dealers." [Doc. 48-1 at p. 2] The warranty term begins on the date of delivery, which in this case was August 9, 2017. *Id.* The warranty included coverage for defects in workmanship and material for component parts of the Subject Stripper.

Upon receiving the Subject Stripper, Hurst ran through the training procedure with Hughes, including the "fire emergency" procedures. Appx. at 0025 (Ex. C at 39:17-40:7); Appx. at 0036 (Ex. E at 9:4-22) On October 23, 2017, immediately prior to using the Subject Stripper, Hughes practiced the "fire emergency" procedures and began harvesting. Appx. at 0026-0027 (Ex. C at 52:19-53:16) After only approximately 2.7 hours of use, Hughes smelled smoke coming from the round module builder (RMB), which is located in the rear of the machine where the bale is made, and initiated the emergency procedure and expelled the burning bale. *Id.* at 58:16-25.

Immediately after Hughes successfully expelled the burning bale, pursuant to Hughes' obligations under the warranty, he contacted Hurst to notify it of the fire to the Subject Stripper. Appx. at 0020 (Ex. B at 19:10-20:13); Appx. at 0028 (Ex. C at 58:3-12); Appx. at 0032 (Ex. D at

34:25-35:7); Appx. at 0035 (Ex. E at 8:15-24); [Doc. 48-1 at p. 2] In turn, Hurst contacted Deere

regarding the fire. Appx. at 0032 (Ex. D at 34:25-35:7) There was no further action taken by

Deere after receiving notice of the fire. Appx. at 0032 (Ex. D at 35:8-36:9)

After receiving notice of the October 23rd fire, Hurst sent its service technician Cade

Owen, to conduct a thorough inspection of the Subject Stripper. Mr. Owen inspected the

machine with great detail, including the Header, and found no sign of any rock, rebar, or any

other type of foreign debris ingestion[1]:

> Q.    When you looked at the header of this machine
>       on October 23rd, 2017 did you see any evidence of rocks
>       being ingested in it?
>
> A.    Not to my knowledge, no, sir.
>
> Q.    Okay.  When you looked at the header on
>       October 2017 -- October 23rd of 2017 did you see any
>       evidence that led you to believe that rebar had been
>       ingested into the machine?
>
> A.    Can you repeat that one more time?
>
> Q.    Sure.  On October 23rd of 2017 when you were
>       doing the inspection of the machine did you see anything
>       on the header that led you to believe that a piece of
>       rebar had been sucked through that machine?
>
> A.    No, sir.
>
> Q.    Okay.  On October 23rd of 2017 when you were
>       doing an inspection on the header of the Hughes stripper
>       did you see any evidence on the header that indicated to
>       you that any foreign debris had been through that
>       machine?
>
> A.    Not to my knowledge, no, sir.

Appx. at 0036 (Ex. E at 11:13-12:7)

---

[1] It should be noted the field Mr. Hughes was harvesting was a blackland farm, meaning there are little to no rocks in the field. Appx. at 0029 (Ex. C. at 63:16-64:3)

As no signs of failure were discovered in the Subject Stripper or the Header, the machine was cleared to continue harvesting. The following day, on October 24, 2017, after an additional 3 hours of use, a second fire broke out. This time, however, Cody Hughes was unable to extinguish the fire and evacuated the Subject Stripper. Cody Hughes again contacted Hurst to inform them of the second fire, and Hurst again contacted Deere to inform them of the same, and Deere again did nothing to respond. Appx. at 0032 (Ex. D at 35:16-36:9) Owen was dispatched to inspect the Subject Stripper a second time and again found no signs of failed or failing components within the Header. Appx. at 0037 (Ex. E at 14:16-22) Since the header showed no signs of failure, Hurst purchased the header from Hughes without performing any repairs to it:

> Q.    Okay.  Did you see -- well -- well, ultimately
>       the header is purchased by Hurst Farm, right?
>
> A.    Yes, sir.
>
> Q.    Did Hurst Farm Supply believe that there was
>       anything wrong or defective with the header when it
>       purchased it?
>
> A.    No, sir.

Appx. at 0033 (Ex. D at 37:11-13; 38:2-5)

At this point in time, Nationwide had not been notified of either of the fires; however, Deere had notice of both. Pursuant to the consumer's obligations under the warranty, Hughes notified the authorized Deere retailer and presented the machine for inspection. [48-1 at p. 2] *see also* Appx. at 0035-0036 (Ex. E at 8:15-20; 10:8-13) Thus, Deere had knowledge of the defect allegation, which would normally trigger a warranty investigation; however, Deere failed to follow its own process to investigate the claim. Appx. at 0020 (Ex. B at 19:10-20:13); *see also* Appx. at 0042 (Ex. F at 241:9-13) (Trace Landers confirming five broken bolt heads are evidence of a defect) Deere's inaction forced Hughes to file a claim with his insurance carrier.

4

This should never have been an insurance claim. After Deere had notice of the second, now much more destructive fire on this brand new Subject Stripper, Deere should have informed CWH Farms that a new machine is on its way, and the defective machine would be picked up post haste. That was not done or even attempted.

## ARGUMENT

### 1. Legal Standard for Summary Judgment

Summary judgment is only appropriate when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c) A dispute is genuine "if the evidence is such that a reasonable jury could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party...." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) The Court must also resolve all reasonable doubts about the facts in favor of plaintiff as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005)

### 2. Summary Judgment Must be Denied Because Deere Admitted to the Existence of the Express Warranty

To recover for a breach of express warranty under Texas law, the plaintiff must prove:

(1) an express affirmation of fact or promise by the seller relating to the goods;
(2) that such affirmation of fact or promise became a part of the basis of the bargain;
(3) that the plaintiff relied upon said affirmation of fact or promise;
(4) that the goods failed to comply with the affirmations of fact or promise;
(5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and
(6) that such failure was the proximate cause of plaintiff's injury.

*Great American Products v. Permabond Int'l. a Div. of Nat'l Starch & Chem. Co.,* 94 S.W.3d 675, 681 (Tex. App. – Austin 2002, pet. denied); Tex. Bus. & Com. Code § 2.313

5

**a. Deere admitted the existence of the express warranty in discovery.**

On December 23, 2019, Plaintiff sent its first set of Requests for Admission to Deere. On January 22, 2020, Deere served its Responses, wherein it admitted the existence of the express warranty for defects in workmanship and material and the duration for the warranty:

> REQUEST FOR ADMISSION NO. 10: Admit that the John Deere limited product warranty for the Subject Stripper covered defects in workmanship and materials.
>
> RESPONSE: Deere admits the Warranty covers, during the applicable warranty term, defects in material or workmanship of parts of new Equipment purchased from a Selling Dealer pursuant to the specific terms of the Warranty, which Deere incorporates by reference into this answer.
>
> Deere denies the remainder of this request.
>
> REQUEST FOR ADMISSION NO. 11: Admit that the John Deere limited product warranty for the Subject Stripper was for twelve (12) months after the purchase of the Subject Stripper.
>
> RESPONSE: Deere admits, under the Warranty, which Deere incorporates by reference into this answer, the warranty term for the Subject Cotton Stripper was 12 months.
>
> Deere denies the remainder of this request.

Appx. at 0012 (Ex. A) In addition, the written warranty provided by Deere states, in part:

> Under these warranties, John Deere will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term. Warranty service must be performed by a dealer or service center located in Canada or the US, and authorized by John Deere to sell and/or service the type of Equipment involved (the "Authorized Dealer").

[Doc 48-1 at p. 2] Consistent with both the Federal Rules of Civil Procedure and Fifth Circuit case law, "a matter admitted under [Rule 36(a)] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); *see also In re*

*Carney*, 258 F.3d 415, 420 (5ᵗʰ Cir. 2001) (stating "Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted.")

Further, during the Rule 30(b)(6) deposition testimony of Deere's corporate representative with knowledge of the warranty investigation process, Trace Landers, it was conclusively established Deere warranted its machines to be free from defects in materials and workmanship:

Q.   Outside of having to order parts, how long
     is the process of evaluating the cause and
     making a determination of warranty
     coverage? How long is that intended to
     take? Obviously, if you determine you
     have to order parts and there is a tail to
     that, but that shorter process of
     evaluating and coming to a determination,
     how long does that take?

A.   Well, it's not that straightforward. It
     depends on the, you know, severity of the
     failure, severity of the loss, you know,
     obviously if it's just a simple sheared
     nut or bolt or something or if it's more
     involved, you know, other components that
     are larger and need more analysis, that's
     going to take longer. So there is really
     not a cut-and-dried answer I can give you.

Q.   You referenced a sheared nut or bolt as a
     possible scenario. Is that the type of
     scenario that gets evaluated for warranty coverage?

A.   It depends. At times, yes, it would be.

Q.   Give me a scenario or describe a scenario
     when it would at times be evaluated for
     warranty coverage?

A.   A time when it could get evaluated for
     warranty would be say you have a tractor,
     you have an implement, maybe a nut or bolt
     falls off on the piece of tillage

equipment and maybe you lose a disc or
something on an implement, and it would
have to be -- so it would have to be --
that implement would have to be in that warranty period,
whatever that warranty period would be.

**Say it's 12 months, and then someone
in that list of people I provided to you
would have to analyze that from Deere, and
we'd have to see if it was a defect of
material or workmanship. If it was indeed
a defect of material or workmanship, then
we would repair or replace that component
or part that was found to be defective.**

Appx. at 0019-0020 (Ex. B at 16:17-18:10)(emphasis added)

Deere has not amended its Responses, nor has it filed a motion with the court for the admission to be withdrawn or amended. As such, Deere's admission as to the existence and duration of the warranty is conclusively established, and is further established by the Rule 30(b)(6) deposition testimony of John Deere's corporate representative.

### b. Deere's representations were part of the basis of the bargain and Cody Hughes/CWH relied on the representations.

Cody Hughes is a fifth generation farmer from the Sweetwater, Texas area. He and his father, Willis Hughes, are 50/50 owners of CWH Farms, and in an effort to maintain harvest efficiency, both decided it was necessary to invest in a modern piece of machinery. Appx. at 0043-0044 (Ex. G); Appx. at 0045-0046 (Ex. H) The decision to invest in the Subject Stripper was not arbitrarily made; in fact, CWH Farms sold all of its machinery to purchase the Stripper. Appx. at 0024 (Ex. C at 14:16-21) When the Subject Stripper was purchased, Hughes and his father were aware John Deere machines were warranted against defects in workmanship and materials, which was part of the reason the Subject Stripper was purchased. Appx. at 0043-0044 (Ex. G); Appx. at 0045-0046 (Ex. H) Further, the general practice of CWH Farms is to make

8

sure its equipment is within the manufacturer's warranty given the cost associated with repairs and delays. *Id.*

This case is distinguishable from *Ackermann v. Wyeth Pharm.,* 471 F.Supp.2d 739, (E.D. Tex. 2006), aff'd, 526 F.3d 203 (5th Cir. 2008), wherein the Court granted summary judgment on Ackerman's breach of express warranty claim because "no express warranty was identified" and Ackermann never relied on any express warranty. *Id.* at 744 Here, Mr. Hughes and his father were aware that Deere's machines were warranted against defects in workmanship and material, and relied upon the same in their purchase of the Subject Stripper.

### 3. Nationwide Has Provided Sufficient Evidence to Infer a Product Defect that Proximately Caused the Fire to the Subject Stripper.

Deere asserts "there has been no finding that the cotton stripper or its components are defective and plaintiff has produced no competent evidence, through expert testimony or otherwise, to support a finding of defect." [Doc. 48, p. 15] To support its argument, Deere selectively points to one area of Plaintiff's origin and cause expert, Mark Whatley's deposition, wherein he agrees that simply because a fire occurred within a couple of hours of operation does not necessarily on its own mean there is something wrong with the machine. [Doc. 48, p. 17] Of note, Whatley was not speaking in regard to the Subject Stripper, he was simply making a general statement about a machine. To somehow claim Plaintiff is solely relying on an inference of defect based upon the fact that a fire occurred within 10 hours of use is wholly inaccurate and disregards Plaintiff's expert reports.

Deere cites *Shafer v. LG Electronics U.S.A., Inc.,* 2010 WL 8757823 (N.D. Tex. Sept. 30, 2010) to bolster its argument that Plaintiff has insufficient evidence to infer a defect. *Shafer* involved an allegedly defective microwave, which caught fire and subsequently burned the Shafer's home down. Shafer subsequently filed suit alleging "(1) breach of the implied warranty

9

of merchantability, (2) breach of the express warranty that the microwave was fit and safe for its intended use, (3) violations of the Texas Deceptive Trade Practices Act ("the DTPA"), (4) marketing defect by failing to adequately warn of dangers." *Id.* at *1. The Court subsequently granted summary judgment in favor of the defendants as "Plaintiffs have offered evidence that fails to raise a fact issue regarding defect or causation." *Id.* at *6.

> The *Shafer* court noted:
>
> Although circumstantial evidence may support an inference of a product defect, the mere fact that a product failed does not alone establish that the product actually had a defect. To raise a genuine issue of material fact in the summary judgment context, a plaintiff's evidence of defect must be more than a mere suspicion or guess. But an inference of a defect is appropriate only if the particular failure at issue tends to eliminate other potential causes of the product's failure. The product's failure must be more than merely consistent with a product defect; it must be the type of failure that would not ordinarily occur in the absence of a defect.

*Id.* at *4 (internal citations omitted). As such, without a specific defect, circumstantial evidence may be used if a plaintiff offers evidence that:

> (1) tends to eliminate other possible causes of the property damage, (2) shows that the product was in the same basic condition at the time of the occurrence as when it left the hands of the defendants, and (3) the damage is of a type that normally would not have occurred in the absence of a defect in the product.

*Id.* Thus, the only evidence *Shafer* was relying upon was the fact that the microwave started on fire, and "none of Plaintiff's experts can identify a specific defect in the microwave that was the producing cause of the fire." *Id.*

The present case is factually distinguishable from *Shafer*. Despite Deere's argument, Nationwide is not solely relying on the fact that a fire started in the Subject Stripper as evidence of a defect. Instead, Nationwide also provides evidence of five saw tooth blade bolt heads that were snapped off from the saw tooth drum as well as contact marks on the doffer, which indicate metal to metal contact within the cleaner of the Subject Stripper. Appx. at 0054 (Ex. I) There is

no dispute whether the five broken bolt heads are signs of mechanical failures, as confirmed by both Plaintiff's expert Steve Hamers and Deere's expert, Mr. Landers:

> Q.    The question of how the heads were
>       broken off is up for debate, but the fact that the
>       heads are broken off is a mechanical failure
>       internal to the machine, right?
>
> A.    Right.

Appx. at 0042 (Ex. F at 241:9-13); *see also* Appx. 0082 (Ex. J at 275:5-17) (Hamers confirming the broken bolt heads are evidence of a mechanical failure in the Subject Stripper).

The evidence offered by Nationwide satisfies the three-part framework outlined in *Shafer*. First, Nationwide's evidence of overtightening of the saw blade bolt heads and gouge marks eliminates other possible causes of the damage.[2] As confirmed by both Nationwide's expert Steve Hamers and Deere's expert Trace Landers, there are three ways in which a bolt head could go missing in a cotton stripper: (1) overtorquing of the screw; (2) debris or a rock of some kind entering the machine and lodging under the blade, popping the bolt head off; or (3) a lateral load (rock or debris) hitting the blade or bolt that could shear the head off. Appx. at 0081 (Ex. J at 125:20-126:15); Appx. at 0042 (Ex. F at 242:2-244:20)

Second, the Subject Stripper was in the exact same condition at the time of the fire when it left Deere's possession. There is no evidence any work had been performed on the Subject Stripper, and it was sold as a brand new to Mr. Hughes/CWH Farms, and was destroyed with less than six hours of use. And third, the mechanical failures and resulting fire originating in this location of the Subject Stripper would not have occurred but for a defect.

---

[2] The issue with the header is addressed in section (b) *infra.*

> **a. The overtightening of the bolt heads was the proximate cause of the fire to the Subject Stripper.**

In a breach of express warranty claim, a plaintiff must show the defendant's breach was the proximate cause of the damages suffered. *Great American Products,* 94 S.W.3d at 681 "Evidence of cause in fact is tested, in part, by means of the "but-for" test—i.e., would the alleged harm have occurred but-for or in absence of the party's alleged breach." *Minsa Corp. v. SFTC, LLC*, 540 S.W.3d 155, 161 (Tex. App.--Amarillo 2017) (citing *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017))

Nationwide has sufficiently developed its theory of causation and presented the same to Deere. The bolts were overtightened during the manufacture of the machine, which caused the five bolt heads to snap off the screws and loosened the saw tooth blades. Appx. at 0055 (Ex. I) The separation of the bolt heads to the fasteners allowed the saw tooth blade to bend back from the drum and produce, while loaded with cotton, metal to metal contact with the doffer. *Id.* The sparks that are created during this contact allowed the harvested cotton to ignite and destroy the Subject Stripper. *Id.*

None of the experts on the case discovered any evidence of foreign debris entering the Subject Stripper, virtually eliminating any explanation of the broken bolt heads being caused through normal operation. Nevertheless, the evidence of a defect in the five broken bolt heads has been conclusively established and accepted. As such, Nationwide has satisfied the proximate cause element of its breach of express warranty claim.

> **b. The opinion of Nationwide's origin and cause expert Mark Whatley is reliable.**

Deere argues "[b]ecause Whatley cannot eliminate other possible causes of the fire, such as a foreign object lodged in the header, he does not have a reliable basis for concluding that the

fire was caused by missing bolt head [sic] in the cotton stripper's cleaner." [Doc 48, p. 26.] This argument fails for two reasons. First, there is **zero** evidence of any foreign debris becoming lodged in the Header or cleaner. Cade Owen of Hurst Farm Supply inspected the Header twice, and both times he found no evidence of any foreign debris or defect within the Header. Appx. at 0036-0039 (Ex. E at 11:13-12:7; 14:16-22; 14:23-15:10; 15:23-16:4; 23:11-22; 25:1-7; 26:23-27:10) There was nothing wrong with the Header, which was purchased by Hurst and sold to another farmer who is currently using the same on his machine. Appx. at 0033 (Ex. D at 37:11-13; 38:2-5)

Second, per the Affidavit of Mark Whatley, after reviewing the deposition testimony of Mr. Owen wherein he removed the shields of the Header during both inspections of the Subject Stripper and found no signs of mechanical or progressive failure, Whatley can rule out the Header as a cause of the fire. Appx. at 0083-0084 (Ex. K)

Thus, Nationwide's claim that the saw tooth blades were loose because the screws were overtightened during the original install at Deere's factory is the only explanation that survives the *Shafer* test. As a result of this overtightening, "[t]he screw heads separated from the overtightened fasteners which allowed the saw tooth blade to bend back from the saw tooth drum and contact the doffer when in operation." Appx. at 0055 (Ex. I)

Deere's argument is similar to the argument set forth by the defendant in *Becker v. Continental Motors, Inc.,* 709 Fed.Appx. 263 (5th Cir. 2017), wherein Continental argued the Magistrate's declaratory judgment was erroneous "because Becker's experts did not identify a specific defect and instead relied on circumstantial evidence to infer a defect's existence." *Id.* at 269 The Court, however, rejected such an argument, stating "[a]lthough this case, like many Continental cites, involves a defective product, this court's analysis must focus on the warranty

13

at issue and not on the requirements for products liability claims more generally... the language of the express warranty itself therefore governs the specificity with which Becker must identify a product defect." *Id.* at 269-70

The language of the warranty in *Becker* "obligates Continental to repair or replace any part or component 'which upon examination if found to the satisfaction of [Continental] to be defective in material or workmanship.'" *Id.* at 270 As such, Becker met "his burden of proof by establishing that it was more likely than not that some defect in material or workmanship existed." *Id.*

Deere's Warranty shares almost identical language as that in *Becker*, whereby Deere "will repair or replace, at its option, any part covered under these warranties which is found to be defective in material or workmanship during the applicable warranty term." [Doc 48-1 at p. 2] Therefore, Plaintiff has sufficiently satisfied its obligation to establish it was more likely than not a defect in workmanship and material existed based upon **all** of the evidence, as articulated above, whereas Deere has repeatedly undertaken no action to even determine if a defect was present, which would normally be the next step in determining whether a bolt was defective:

> Q.      What does John Deere do to determine
>         whether or not a bolt that is alleged to
>         have been defective and under warranty,
>         what does John Deere do to determine
>         whether or not that bolt is defective in
>         workmanship or material?
>
> A.      They would have to inspect it. **They would
>         have to do a metallurgical analysis of it.**
>         Zinc coating analysis. They would
>         basically have to inspect it to the print.
>
> Q.      And that would likely require taking the
>         bolt and doing some physical work on it
>         itself, right?

A.      Right.

Q.      And that is what John Deere would believe
        is necessary to determine whether or not a
        bolt that is alleged to have been
        defective and under warranty was in fact
        defective in workmanship or material,
        right?

A.      Right.

Appx. at 0021-0022 (Ex. B at 193:25-194:20)(emphasis added) Therefore, despite its attempt to

shift this case outside of the language of its own warranty, the Court "'will not rewrite

agreements to insert provision parties could have included or to imply restraints for which they

have not bargained." *Becker,* 709 Fed.Appx. at 270 (citing *Tenneco Inc. v. Enterprise Products

Co.,* 925 S.W.2d 640, 646 (Tex. 1996)

        Deere's corporate representative deposition testimony outlined Deere's obligations under

the express warranty:

Q.      No. I'm looking from A to B. I'm looking
        for, if I have a lawn tractor from John
        Deere that's under warranty, and I bring
        it to the dealership, who am I going to
        deal with at Deere?

A.      Okay.

Q.      I mean, from the very starting point, do I
        have to send a form in? How do I have to
        notify you? What's step 1, 2, 3 through
        the end?

A.      Okay. So I understand. **So what the
        customer would do is contact an approved
        John Deere dealer that would be able to
        perform the work. They would be
        responsible for providing that machine to
        the dealer, you know, for inspection to
        see what's wrong with it.** If it is
        something that would be warrantable,

15

> meaning, we have a defect of material or
> workmanship, you know, and I've mentioned
> all the folks that may need to help in
> that determination, being a DTAC
> representative, potentially an engineer
> from John Deere, potentially a fire
> engineer from John Deere.
> And then when that happens, if that
> is approved, Deere would replace at no
> cost, repair or replace that defective
> component on this particular machine.

Appx. at 0020 (Ex. B at 19:10-20:13)(emphasis added) As stated, Hughes notified the dealer of

both fires, and the Subject Stripper was inspected by Mr. Owen both times. Deere did not follow-

up to determine whether there was a defect or take any action regarding the machine until it was

notified by Hughes insurance carrier, Nationwide. Appx. at 0032 (Ex. D at 34:25-36:9)

In any event, whether Nationwide's claim is analyzed under *Shafer* or *Becker*, the

evidence provided is sufficient to warrant the inference of a defect, and Deere has failed to

satisfy its obligations under the warranty and failed to meet its burden to show Nationwide's

evidence is insufficient. Summary judgment must therefore be denied.

### 4. The Exclusive Remedy Provided by Deere's Express Warranty Fails of its Essential Purpose and is Unenforceable as a Matter of Law.

Deere argues "to the extent the Court determines plaintiff may recover from Deere, any

recovery should be limited to the repair and replacement of the alleged defective bolt heads."

[Doc. 48, p. 27] Deere's exclusive remedy fails as a matter of law.

Section 2.719 of the Texas Business and Commerce Code provides, in part:

> (b) Where circumstances cause an exclusive or limited remedy to fail of its essential
> purpose, remedy may be had as provided in this title.

> (c) Consequential damages may be limited or excluded unless the limitation or exclusion
> is unconscionable. Limitation of consequential damages for injury to the person in the
> case of consumer goods is prima facie unconscionable but limitation of damages where
> the loss is commercial is not.

16

That is not to say a party cannot limit its liability to repair and place certain parts; however, under Texas law:

> Where an apparently fair and reasonable limitation because of circumstances fails in its purpose or operates to deprive a party of the substantial value of the bargain, the limited remedy must give way to the general remedy provisions of the code. From the buyer's standpoint, the purpose of the limited remedy is to give the buyer goods that conform to the contract within a reasonable time after the defect is discovered.... However, the limited remedy fails of its essential purpose and deprives the buyer of the substantial value of the bargain when the warrantor does not correct the defect within a reasonable time.

*Mercedes-Benz of N.A., Inc. v. Dickenson,* 720 S.W.2d 844, 854 (Tex. App.--Fort Worth 1986)

Deere's position is that its warranty only covers component parts to the machine; however, a consumer does not purchase component parts; the consumer purchases a complete machine. Had Deere satisfied its obligations under its warranty to affirmatively determine whether the bolts were defective, and it found they were, Deere would repair and replace the same.[3] Cody and Willis Hughes intended and believed they were buying a warranted machine (Appx. XXX (Ex. G); Appx. XXX (Ex. H)), and for Deere to offer five replacement bolts in exchange for the Subject Stripper deprives Hughes/CWH Farms "of the substantial value of the bargain," and therefore fails of its essential purpose and is unenforceable as a matter of law.

---

[3] Deere's warranty document indicates it could require Deere to pay for the defective machine:

> In the event the above warranty fails to correct purchaser's performance problems caused by defects in workmanship and/or materials, purchaser's exclusive remedy shall be limited to payment by John Deere of actual damages in an amount not to exceed the amount paid for the equipment.

[Doc. 48-1 at p. 2]

17

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion for summary judgment on Plaintiff's negligent operation claim be denied in all respects as there are fact questions which exist that preclude summary judgment.

Respectfully submitted,

DOYEN SEBESTA, LTD., LLP


By____/s/ David J. Taylor_____
William T. Sebesta – Attorney in Charge
Texas Bar No. 00784941
wsebesta@ds-lawyers.com
Randall J. Poelma, Jr.
Texas Bar No. 24047823
rpoelma@ds-lawyers.com
16945 Northchase Drive
Suite 1400
Houston, TX 77060
713.580.8900 – telephone
713.580.8910 – facsimile

YOST & BAILL, LLP
David J. Taylor
*Pro Hac Vice*
dtaylor@yostbaill.com
Michelle D. Hurley
*Pro Hac Vice*
mhurley@yostbaill.com
2050 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
612.338.6000 – telephone
612.344.1689 – facsimile

*ATTORNEYS FOR PLAINTIFF*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2020, a true and correct copy of the foregoing

document was electronically filed on the CM/ECF system which will automatically serve a

Notice of Electronic Filing of on the following attorney in charge for Defendant:

***Via Email -*** cblackerby@germer-austin.com
***Via Email -*** bzinnecker@germer-austin.com
Chris A. Blackerby
Benjamin T. Zinnecker
GERMER BEAMAN & BROWN PLLC
301 Congress Avenue
Suite 1700
Austin, TX 78701

*ATTORNEYS FOR DEFENDANT*

       /s/ David J. Taylor
David J. Taylor

19