IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
| Defendant. | § | |

## DEERE & COMPANY'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MARK WHATLEY AND BRIEF IN SUPPORT

GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile
Chris A. Blackerby
State Bar No. 00787091
cblackerby@germer-austin.com
Ben Zinnecker
State Bar No. 24066504
bzinnecker@germer-austin.com

**ATTORNEYS FOR DEFENDANT
DEERE & COMPANY**

4745645

<u>**TABLE OF CONTENTS**</u>

**Page(s)**

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ...................................................................... iv

**CONTENTS**

I.    RELEVANT FACTS AND EXPERT OPINIONS .................................. 1

      A.    Case Background ........................................................................ 1

      B.    Mark Whatley's Background and Opinions ................................ 2

II.   STANDARDS FOR CAUSE-AND-ORIGIN
      EXPERT TESTIMONY ............................................................................ 4

      A.    *Daubert* Backdrop ...................................................................... 4

      B.    NFPA 921's Specific Requirements for Fire
            Cause-and-Origin Experts ........................................................ 6

III.  ARGUMENT AND AUTHORITIES FOR
      EXCLUSION OF TESTIMONY .............................................................. 8

      A.    Whatley's cause-and-origin opinions are
            unreliable because he failed to eliminate the
            header as a potential fire origin. .................................................. 8

      B.    Whatley's belated reliance on the header
            testimony of Hurst mechanic Owen is faulty
            because Owen is not a fire cause-and-origin
            expert. ........................................................................................ 13

      C.    Whatley's cause-and-origin opinions are
            unreliable because he failed to eliminate other
            potential causes of the fire. ...................................................... 14

            1.    Whatley failed to eliminate a foreign
                  object coming into the machine through
                  the header and causing the fire. ...................................... 14

            2.    Whatley failed to eliminate smoldering
                  materials from the first, October 23, 2017
                  fire as a potential cause of the fire at issue. .................. 16

# TABLE OF CONTENTS
### (continued)

**Page(s)**

D.     Whatley's metal-on-metal-contact opinion is conclusory. ..................................................................... 17

E.     Whatley's "hydraulic oil leak" opinions are unreliable because they are conclusory and based on altered evidence............................................................ 18

IV.    CONCLUSION AND PRAYER ........................................................... 19

Appendix ................................................................................ (attached)

1.     July 15, 2020 Deposition of Mark Whatley ........... APPX.0001-APPX.0038 (Exhibit A)

2.     May 19, 2020 Deposition of Cody Wayne Hughes ................................................. APPX.0039-APPX.0043 (Exhibit B)

3.     July 28, 2020 Deposition of Cade Owen ............... APPX.0044-APPX.0051 (Exhibit C)

4.     Mark Whatley March 4, 2020 Report ................... APPX.0052-APPX.0055 (Exhibit D)

5.     August 10, 2020 Deposition of Steven Hamers ..... APPX.0056-APPX.0065 Vol. I & II (Exhibit E)

6.     July 28, 2020 Deposition of Jeff Ratheal ............... APPX.0066-APPX.0070 (Exhibit F)

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*AIG Europe Ltd. v. Caterpillar Inc.*,
    No. 1:17-CV-319, 2019 WL 8806217
    (E.D. Tex. Oct. 3, 2019) ......................................................................... 6

*Atl. Specialty Ins. Co. v. Porter, Inc.*,
    No. CV 15-570, 2016 WL 6126062
    (E.D. La. Oct. 20, 2016), *aff'd*,
    742 F. App'x 850 (5th Cir. 2018) ......................................................... 12

*Barnett v. Procom Heating, Inc.*,
    No. 4:17-CV-380-A, 2018 WL 1597406
    (N.D. Tex. Apr. 2, 2018) ..................................................................... 17

*Bryte ex rel. Bryte v. Am. Household, Inc.*,
    429 F.3d 469 (4th Cir. 2005) ............................................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................. 4

*Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*,
    No. 7:12-CV-00133-O, 2014 WL 3744976
    (N.D. Tex. July 30, 2014) ...................................................................... 5

*Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*,
    394 F.3d 1054 (8th Cir. 2005) ......................................................... 6, 12

*Ford Motor Co. v. Ledesma*,
    242 S.W.3d 32 (Tex. 2007) .............................................................. 13, 18

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ......................................................................... 5, 17

*Gharda USA, Inc. v. Control Sols., Inc.*,
    464 S.W.3d 338 (Tex. 2015) ..................................................... 13, 14, 18

*Hill v. Ethicon Inc.*,
    No. 7:19-CV-00123-O, 2020 WL 3485579
    (N.D. Tex. Feb. 28, 2020) .................................................................. 4, 5

*Huss v. Gayden*, 571 F.3d 442
    (5th Cir. 2009) ...................................................................................... 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jacob v. Int'l Cellulose Corp.*,
No. 03-06-00210-CV, 2007 WL 1237963
(Tex. App.—Austin Apr. 27, 2007, no pet.) ........................................................ 12

*Knight v. Kirby Inland Marine, Inc.*,
482 F.3d 347 (5th Cir. 2007) ................................................................................ 5

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) .............................................................................................. 5

*Long v. Faenas Transp., LLC*,
No. 1:19-CV-200, 2020 WL 3513724
(E.D. Tex. Mar. 12, 2020) ................................................................................. 6, 8

*Madison v. Courtney*,
No. 4:18-CV-00671-O, 2019 WL 8263428
(N.D. Tex. Jan. 26, 2019) ................................................................................ 5, 13

*Shafer v. LG Elecs. U.S.A., Inc.*,
No. 4:09-CV-105-Y, 2010 WL 8757823
(N.D. Tex. Sept. 30, 2010) .................................................................................. 12

*Sims v. Kia Motors of America, Inc.*,
839 F.3d 393 (5th Cir. 2016) ................................................................................ 5

*Watkins v. Telsmith, Inc.*,
121 F.3d 984 (5th Cir. 1997) ................................................................................ 5

*Werth v. Hill-Rom, Inc.*,
856 F. Supp. 2d 1051 (D. Minn. 2012) ........................................................... 6, 12

*Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) .................................................... 13

## Other Authorities

NFPA 921 (2017 Ed.), § 18.5.1 ......................................................................... 7, 14

NFPA 921 (2017 Ed.), § 18.7 ............................................................................ 7, 14

NFPA 921 (2017 Ed.), § 19.6.5 ......................................................................... 8, 14

## Rules

Fed. R. Evid. 702 ............................................................................................... 4, 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-00425-O |
| | § | |
| DEERE & COMPANY, | § | |
| Defendant. | § | |

**DEERE & COMPANY'S MOTION TO EXCLUDE THE EXPERT TESTIMONY
OF MARK WHATLEY AND BRIEF IN SUPPORT**

Plaintiff's retained fire cause-and-origin expert, Mark Whatley, offers conclusory opinions lacking a reliable foundation. Whatley improperly failed to eliminate a potential area of fire origin and several alternative fire causes. His remaining theories about the physical evidence are speculative and conclusory. Deere requests the Court exclude Whatley's opinions.[1]

**I.
RELEVANT FACTS AND EXPERT OPINIONS**

A.   Case Background

This case arises out of a fire involving a Deere CS690 Cotton Stripper owned by CWH Farms, that occurred on October 24, 2017. On the day of the fire, Hughes filed an insurance claim with Plaintiff for the damage to the cotton stripper. Plaintiff paid the claim

---

[1]   While Deere acknowledges the Court's ruling on Deere's motion for summary judgment, Deere believes the Court can (and should) grant this expert challenge. The motion for summary judgment only included limited objections to Plaintiff's proffered summary judgment evidence, and Deere's objections to Plaintiff's evidence were to protect Deere's summary judgment record. This motion includes a full expert challenge, supporting evidence, and the reasons why Whatley's opinions are unreliable.

and brought this subrogation action alleging Deere breached an express warranty that the machine would be free from defects in materials and workmanship.  Complaint ¶¶ 15-16. Plaintiff alleges the cotton stripper was defective because five (5) bolts securing saw tooth blades to a drum in the cleaner of the machine were over torqued at the factory causing the bolt heads to break off.  Plaintiff alleges these broken bolt heads allowed the blade to contact a metal doffer causing sparks that ignited cotton.



*Photo of Saw Drum Blade Taken by Steve Hamers (17H101-SRH-089)*

B.    Mark Whatley's Background and Opinions

Plaintiff designated Mark Whatley and Steve Hamers to support its defect and causation allegations.  Appx. at 003 (Ex. A at 12:11-16).  Whatley is a cause-and-origin investigator and Hamers is an engineer.  Appx. at 002-004 (Ex. A at 6:11-15, 12:17-13:2,

13:6-11, 14:11-15.  It was Whatley's job to determine where the fire originated.[2]  Appx. at 0057 (Ex. E at 41:4-24).  Hamers' role was to determine if there was a competent ignition source in the area of origin. Appx. 0060 (Ex. E at 78:25-79:4).  But Whatley's area of origin was the entire "cotton processing area" which runs the length of the machine from the header to the round module builder in the back.  Appx. 0061, 0063 (Ex. E at 81:24-82:19, 254:3-7).

The difficulty in investigating a cotton stripper fire is that—like other equipment that harvests flammable crops—it can catch fire for a variety of reasons.[3]  Appx. 002-006, 0018 (Ex. A at 6:11-15, 16:25-17:20, 23:7-10, 81:1-82:20); Appx. 0040-0041 (Ex. B at 40:15-41:3, 41:17-42:4); Appx. 0067-0068 (Ex. F at 7:15-8:1, 57:5-25); Appx. 0045-0046, 0049 (Ex. C at 7:23-8:3, 28:4-22, 28:24, 38:2-5).  And because cotton flows from the header rearwards, it can ignite without causing damage to the machine or leaving evidence until reaching the accumulator where cotton accumulates.  Appx. 0015, 0030, 0036 (Ex. A at 64:2-8, 131:9-17, 171:19-172:1); Appx. 0047, 0049 (Ex. C at 29:4-5, 29:7-15, 29:17-20, 29:22, 39:2-6).

Whatley eventually concluded the fire originated in the cleaner because missing bolt heads were the only potential ignition source Hamers found.  Appx. 0015, 0019-0020

---

[2]   Whatley has no expertise in agricultural equipment.  Appx. 0004 (Ex. A at 14:16-18). Whatley has never investigated a fire in a John Deere cotton stripper before.  Appx. 0004 (Ex. A at 15:2-6).  He has never operated a cotton picker or any other type of harvesting equipment.  Appx. 0007 (Ex. A at 26:15-19, 28:6-9).  He has never worked as a farmer or in the farm business. Appx. 0007 (Ex. A at 28:10-12).

[3]   A common cause is the ingestion of foreign material that causes a spark and ignites cotton. Appx. 0010, 0018 (Ex. A at 42:11-43:1, 81:1-82:20).

(Ex. A at 62:11-63:9, 87:12-88:1, 89:12-19); Appx. 0062 (Ex. E at 148:25-149:12).  But other than confirming the general concept that metal on metal contact can cause a spark, Whatley did nothing to evaluate Hamers' theory – he simply "took it at face value."  Appx. 0020-0024, 0037 (Ex. A at 90:15-25, 91:14-92:4. 93:20-94:8, 94:17-95:13, 98:20-99:3, 100:6-12, 103:1-13, 105:4-11, 174:12-23). And he did not observe any other physical evidence that the cleaner was the origin of the fire.  Appx. 0015 (Ex. A at 63:10-20, 64:2-13).

But neither Hamers nor Whatley were able to determine whether there was evidence of a competent ignition in the header because they could not inspect it.  And as discussed in Section III. below, Whatley did not reliably eliminate the header as a potential area of origin.  He did not rule out alternative fire causes—such as ingestion of foreign debris or smoldering materials from the first, October 23, 2017 fire.  And his metal-on-metal contact hypothesis is conclusory because he conducted no analysis to support the hypothesis. Deere, therefore, requests the Court exclude Whatley from testifying.

## II.
## STANDARDS FOR CAUSE-AND-ORIGIN EXPERT TESTIMONY

A.   *Daubert* Backdrop

"Federal Rule of Evidence 702 governs the admissibility of expert testimony."  *Hill v. Ethicon Inc.*, No. 7:19-CV-00123-O, 2020 WL 3485579, at *2 (N.D. Tex. Feb. 28, 2020) (O'Connor, J.) (citing *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).  Rule 702 incorporates the principles the Supreme Court articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *Eagle Oil & Gas Co. v. Travelers Prop. Cas.*

*Co. of Am.*, No. 7:12-CV-00133-O, 2014 WL 3744976, at *3 (N.D. Tex. July 30, 2014) (citing Fed. R. Evid. 702, adv. comm. notes (2000)).  "Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable."  *Madison v. Courtney*, No. 4:18-CV-00671-O, 2019 WL 8263428, at *1 (N.D. Tex. Jan. 26, 2019) (O'Connor, J.) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997)).  The trial court makes this preliminary determination under Federal Rule of Evidence 104(a).  *Eagle Oil & Gas Co.*, 2014 WL 3744976 at *3 (citations omitted).

The reliability requirements for scientific testimony also apply to technical and other specialized knowledge.  *Hill*, 2020 WL 3485579 at *3 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)).  "The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony."  *Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 400 (5th Cir. 2016) (citation omitted).  "The expert's testimony must be reliable at each and every step or else it is inadmissible."  *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).  "The reliability analysis applies to all aspects of an expert's testimony:  the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."  *Id.* (quotation omitted).  When an expert's say-so is the only connection between the expert's opinion and the underlying data, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

B.    NFPA 921's Specific Requirements for Fire Cause-and-Origin Experts

The National Fire Protection Association ("NFPA") issues guidelines for fire investigation that establish the methodology for cause and origin investigators.  Appx. 0003 (Ex. A at 11:1-13, 11:20-12:10).  "The methodology set forth by [NFPA] 921 has been well recognized as an accepted methodology under Federal Rule of Evidence 702 for determining cause and origin of fires."  *Long v. Faenas Transp., LLC*, No. 1:19-CV-200, 2020 WL 3513724, at *6 n.2 (E.D. Tex. Mar. 12, 2020) (quotation omitted).  NFPA 921 applies to fire cause-and-origin expert opinions in warranty cases like this one.  *AIG Europe Ltd. v. Caterpillar Inc.*, No. 1:17-CV-319, 2019 WL 8806217, at *2, 9 (E.D. Tex. Oct. 3, 2019); *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1056, 1057-58 (8th Cir. 2005); *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1057 (express warranty claim), 1059 n.6 (D. Minn. 2012).

Section 18.5.1 of NFPA 921 requires an investigator to develop an initial fire origin hypothesis and continue considering reasonable origin hypotheses until there is sufficient evidence to discard them:

> **18.5.1  Initial Hypothesis.**  The initial origin hypothesis is developed by considering witness observation, by conducting an initial scene assessment, and by attempting to explain the fire's movement through the structure.  This process is accomplished using the methods described in earlier sections of this chapter.  The initial hypothesis allows the investigator to organize and plan the remainder of the origin investigation.  <u>The development of the initial hypothesis is a critical point in the investigation.  It is important at this stage that the investigator attempt to identify other feasible origins, and to keep all reasonable origin hypotheses under consideration until sufficient evidence is developed to justify discarding them.</u>

NFPA 921 (2017 Ed.), § 18.5.1 (bold in original, underline added); Appx. 0031 (Ex. A at

133:7-21).  Section 18.7 requires the investigator to consider, and eliminate, all credible

alternative fire origin theories before making a determination:

> **18.7  Selecting the Final Hypothesis.**  Once the hypotheses regarding the
> origin of the fire have been tested, the investigator should review the entire
> process, to ensure that all credible data are accounted for and all credible
> alternate origin hypotheses have been considered and eliminated.  <u>When
> using the scientific method, the failure to consider alternate hypotheses is a
> serious error.</u>  A critical question to be answered by fire investigators is, "Are
> there any other origin hypotheses that are consistent with the data?"  the
> investigator should document that facts that support the origin determination
> to the exclusion of all other potential origins.

NFPA 921 (2017 Ed.), § 18.7 (bold in original, underline added); Appx. 0031 (Ex. A at

136:9-20).  Section 19.6.5 requires the investigator to eliminate all alternative fire causes

and areas of origin and prohibits the "negative corpus" process of elimination:

> **19.6.5\*  Appropriate Use.**  The process of elimination is an integral part of
> the scientific method.  All potential ignition sources present, or believed to
> be present in the area of origin should be identified and alternative
> hypotheses should be considered and challenged against the facts.
> Elimination of a testable hypothesis by disproving the hypothesis with
> reliable evidence is a fundamental part of the scientific method.  However,
> the process of elimination can be used inappropriately.  <u>Identifying the
> ignition source for a fire by believing to have eliminated all ignition sources
> found, known, or suspected to have been present in the area of origin, and
> for which no supporting evidence exists, is referred to by some investigators
> as *negative corpus.*</u>  Determination of the ignition source must be based on
> data or logical inferences drawn from that data.  Negative corpus has
> typically been used in classifying fires as incendiary, although the process
> has also been used to characterize fires classified as accidental.  <u>The negative
> corpus process is not consistent with the scientific method, is inappropriate,
> and should not be used because it generates untestable hypotheses, and may
> result in incorrect determinations of the ignition source and first fuel ignited.</u>
> Any hypotheses formulated for the casual factors (e.g., first fuel, ignition
> source, and ignition sequence), must be based on the analysis of facts and
> logical inferences that flow from those facts.  Those facts and logical
> inferences  are  derived  from  evidence,  observations,  calculations,

experiments, and the laws of science.  Speculative information cannot be included in the analysis.

NFPA 921 (2017 Ed.), § 19.6.5 (bold in original, underline added); Appx. 0034-0035 (Ex. A at 164:21-165:1).  "Thus, the standard mandated by NFPA 921 is significantly more stringent than [the plaintiff's] burden of proof by a preponderance of the evidence that applies in this case."  *Long*, 2020 WL 3513724 at *6.

### III.
### ARGUMENT AND AUTHORITIES FOR EXCLUSION OF TESTIMONY

Deere does not challenge Whatley's general qualifications to conduct a fire investigation.  But it does challenge the reliability of his opinions because he violated NFPA 921 by failing to properly eliminate other potential cause and origin hypotheses.

A.    Whatley's cause-and-origin opinions are unreliable because he failed to eliminate the header as a potential fire origin.

Whatley opines the origin of the fire was the cleaner. He acknowledges NFPA 921 requires investigators to determine cause and origin by identifying all possibilities and then eliminating all but one:

> Q.    Okay.  And it [Section 18.7 of NFPA 921] says – it goes on to say a critical question – is, "Are there other origin hypotheses that are consistent with that data?"  The investigator should document the facts that support the origin determination **to the exclusion of all other potential origins**.· Right?
>
> A.    Yes.

Appx. 0031 (Ex. A at 136:15-20) (emphasis added); *see also* Appx. 0018, 0021-0022 (Ex. A at 83:9-12, 95:17-96:9; 99:11-100:3).  So unless Whatley can eliminate the header as a possible origin, he cannot reliably opine the fire originated in the cleaner.  But Whatley

admits he cannot eliminate the header possibility because it was not preserved in its post-fire condition.  Appx. 0018 (Ex. A at 84:3-24).

Whatley inspected the cotton stripper on December 13, 2017.  Appx. 0006 (Ex. A at 22:8-11).  Whatley expected the header would be there during the inspection, but it was not.  Appx. 0008-0009 (Ex. A at 36:10-24, 37:2-8, 37:19-25, 38:20-39:1).  Inspecting the header was necessary for an analysis under NFPA 921 because the header was a "very important" part of the machine and needed to be eliminated as a potential area of fire origin.  Appx. 0003, 0010, 0014, 0016, 0021, 0032 (Ex. A at 11:1-13, 12:4-10, 41:15-21, 58:4-20, 75:1-6, 95:23-96:9, 138:8-11).  The header needed to be eliminated because cotton flows from the header rearwards, so it can ignite without causing damage to the machine.  Appx. 0007, 0008, 0015 (Ex. A at 27:12-28:5, 36:10-24, 64:2-8).

It was also important because there was physical evidence the header could have been the origin of the fire.  During his inspection, Whatley observed a darkened area in the throat of the machine, where the header attached.  Appx. 0016 (Ex. A at 74:9-14, 74:16-25). In his report, Whatley noted this dark spot as "[t]hermally-induced discoloration," meaning discoloration "[c]aused by heat":



*Figure 9:  Thermally-induced discoloration on header*

Appx. 0054 (Ex. D at CWH000046); Appx. 0011 (Ex. A at 46:10-25, 47:7-14, 48:9-14).[4]

If heat caused the discoloration, that is evidence the fire originated in the header.  Appx.

0013-0014 (Ex. A at 56:17-57:1).  But because the header was not available for inspection,

Whatley could not eliminate it as the potential origin:

> Q.    So when you inspected – did your initial inspection, was there anything that allowed you to eliminate the header as a potential origin of the fire?  Since you couldn't actually inspect the header.
>
> A.    Not specifically.
>
> Q.    And when you say "Not specifically" – is there something generally or just – I mean – if that's a potential origin, that's a hypothesis that needs to be eliminated.  **You didn't have any evidence to allow you to eliminate that when you did the initial inspection.**
>
> A.    **Correct.**
>
> Q.    **True?**

---

4    In his deposition, Whatley backtracked this opinion and now believes it is discoloration from a hydraulic oil leak.  Appx. 0012 (Ex. A at 52:6-15).  This opinion is flawed for the reasons discussed in Section III.C. below.

A.      **Right.**

Appx. 0018 (Ex. A at 84:3-15) (emphasis added); *see also* Appx. 0014, 0016, 0033 (Ex. A 58:4-20, 59:8-19, 74:15-25, 75:1-6, 141:9-14).   Whatley openly acknowledged "the problem we had – or I had in this case is simply that we're dealing with a limited amount of data and evidence.  We don't have the header."  Appx. 0032 (Ex. A at 137:2-9).

After he wrote his report, Whatley inspected the header in May 2020.  Appx. 0011, 0031-0032 (Ex. A at 48:15-24, 136:23-137:1).   By that time, it had been sold twice, refurbished, painted, and harvested thousands of acres.  Appx. 0013, 0016-0017 (Ex. A at 53:7-23, 76:17-77:9).  The header in May 2020 had been altered and was not in the same condition as it was at the time of the fire.   Appx. 0017 (Ex. A at 77:10-14, 77:22-25).  Because of this material alteration, Whatley did not have sufficient evidence to eliminate the header as a potential origin of the fire:

> Q.      And – and when you did eventually get to – to inspect the header – you talked about how it had been changed.  Painted, had gone through a bunch of use, two – two owners, thousands of acres of operation.  Its – its condition – had been material [sic] altered.  **So I – would you agree with me that even when you got to inspect the header – because of its change, you were not able to eliminate it as a potential origin.**
>
> A.      **Yes**.

Appx. 0018 (Ex. A at 84:16-24) (emphasis added); *see also* Appx. 0017, 0023, 0031-0033 (Ex. A at 76:17-77:14, 101:11-19, 103:3-13, 135:21-25, 140:13-17, 141:9-14).

Whatley's failure to examine and eliminate the header as a potential fire origin renders his opinions unreliable.  *See, e.g., Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477-78 (4th Cir. 2005) (excluding fire expert's opinion because he failed to

"closely examine" a potential area of origin); *Jacob v. Int'l Cellulose Corp.*, No. 03-06-00210-CV, 2007 WL 1237963, at *6-7 (Tex. App.—Austin Apr. 27, 2007, no pet.) (despite determining fire cause to a "reasonable scientific certainty," fire expert's failure to rule out potential alternative cause rendered his opinion "little more than speculation").[5]

Nor has Whatley conducted any testing that would allow him to eliminate the header as an origin of the fire. Appx. 0023 (Ex. A at 101:11-17). Whatley's failure to test his theory is another "fatal flaw" in his fire origin opinions. *Fireman's Fund Ins. Co.*, 394 F.3d at 1059 (excluding expert team's testimony because "neither expert carefully examined this hypothesis of fire origin against empirical data obtained from fire scene analysis and appropriate testing, as required by NFPA 921"); *Atl. Specialty Ins. Co. v. Porter, Inc.*, No. CV 15-570, 2016 WL 6126062, at *7 (E.D. La. Oct. 20, 2016) (excluding cause-and-origin expert's opinions for failure to test and obtain relevant data, noting the failure "has been found particularly relevant by other courts in *Daubert* fire cases"), *aff'd*, 742 F. App'x 850 (5th Cir. 2018); *Shafer v. LG Elecs. U.S.A., Inc.*, No. 4:09-CV-105-Y, 2010 WL 8757823, at *5 (N.D. Tex. Sept. 30, 2010) (fire cause-and-origin expert's failure to test an exemplar rendered the expert's opinions "no more than mere surmise or speculation"); *Werth*, 856 F. Supp. 2d at 1063 (expert team's failure to physically test its

---

[5] Plaintiff attached an affidavit from Whatley to its response to Deere's motion for summary judgment in which Whatley claims he can now eliminate the header because Owen "found no signs of any issues with the header." *See* ECF No. 55, Appx. at 0083-0084. As discussed in Section B below, Whatley's reliance on Owen's testimony is flawed because Owen is not a cause-and-origin expert and was not performing a cause-and-origin analysis.

causation theory "undermines the reliability of its opinion and renders it too speculative to admit").

B.    Whatley's belated reliance on the header testimony of Hurst mechanic Owen is faulty because Owen is not a fire cause-and-origin expert.

On August 28, 2020—after Whatley wrote his report and gave his deposition—Whatley provided an affidavit in which Whatley claims he can now eliminate the header because Hurst field mechanic Owen "found no signs of any issues with the header."  *See* ECF No. 55, Appx. at 0083-0084.  Whatley's reliance on Owen's testimony is flawed because Owen is not a cause-and-origin expert and was not performing a cause-and-origin analysis of the header.  Appx. 0046 (Ex. C at 26:2-5, 27:21-24).  He has never worked for a fire department and is not a trained fire investigator.  Appx. 0046 (Ex. C at 26:10-12).  While Owen is a mechanic qualified to diagnose mechanical issues with cotton strippers, he lacks the expertise to eliminate the header as a potential cause and origin of the fire.[6]

Whatley's elimination of the header is unreliable because "'it is based on unreliable data.'"  *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 38-39 (Tex. 2007)).  In *Gharda USA*, two fire cause-and-origin experts (Rice and Russo) relied on two chemists (Cheremisinoff and Armstrong) to support their cause and origin opinions.  464 S.W.3d at 346.  The Court excluded the chemists' opinions as unreliable.  *Id.* at 351-52.  Because the chemists'

---

[6]    Deere reiterates its objection to Plaintiff's attempt to use Owen's testimony as evidence of fire cause and origin because Plaintiff did not designate Owen as a fire cause-and-origin expert, and Owen is not qualified to render those opinions. *Madison*, 2019 WL 8263428 at *1 (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

excluded opinions were foundational to the cause-and-origin opinions, the Court held the cause-and-origin experts' opinions were also unreliable. *Id.* at 352.

Whatley's reliance on Owen's testimony is similarly flawed. When Owen observed the header after the fire, he was not conducting (and could not have conducted) a fire cause-and-origin analysis, because he is not qualified to do so. Because Owen's header testimony is an insufficient (and the only) foundation for Whatley's elimination of the header as a potential fire origin, the Court should exclude Whatley's opinions regarding elimination of the header.

C.   <u>Whatley's cause-and-origin opinions are unreliable because he failed to eliminate other potential causes of the fire.</u>

     *1.*      *Whatley failed to eliminate a foreign object coming into the machine through the header and causing the fire.*

Violating NFPA 921 Sections 18.5.1, 18.7, and 19.6.5, Whatley did not properly rule out the possibility that something other than defective bolt heads caused the fire. Whatley acknowledges there are numerous reasons that harvesting equipment like a cotton stripper could catch fire that do not involve a defect:

> Q.     . . . But as part of your analysis in this – in – in this case, did you come up with a list of – or have an idea of how a fire could start in a cotton picker? Just in general. Like these are the possible ways fires could start in a cotton picker. Did you come up with something like that?
>
> A.     Yes. It – it really looks at – **looking at the operation of the machine – it looks like there's a lot of different ways a fire can start in one of those.**
>
> Q.     Right.
>
> A.     **There's a lot of moving parts. Cotton is a [*sic*] easily ignited fuel. There's a lot of ventilation.** So yes.

14

Q.      Right.  Cotton itself is pretty flammable.  Right?

A.      Yes.  Cotton and the – the dust and trash that is accumulated during
        its harvest.

Q.      Okay.  **One potential cause – or what could happen was – you
        could have a foreign object – rock or rebar or something that gets
        in – when the – when the – comes in through the header.**  Right?

A.      **Yes.**

Q.      It could ignite the cotton and the cotton would go back and start it that
        way.  That's a potential way –

A.      Yes.

Q.      **Something could be ingested and get into the cleaner.  Some rock
        or foreign object could get into the cleaner and cause some kind
        of spark in the cleaner area, which might ignite some piece of
        cotton, which would then make its way back to the accumulator.**
        And even if it's a small spark and a small – little flame – it could
        eventually get to the accumulator where there's lots of – you know,
        lots of flammable material.  It could start that way.  Right?

A.      **Yes**.

Q.      Okay.  And then, of course, you – you could have **some spark
        occurring in the actual accumulator or the baler itself.  Something
        could get in there and cause a spark somehow.  Some foreign
        object could get in there**.

A.      **Yes.  I think if – if a foreign object got in there – that at least would
        have to be explored as potential.**

Appx. 0018 (Ex. A at 81:1-82:18) (emphasis added); *see also* Appx. 0024-0025 (Ex. A at

108:16-109:9) (foreign object, such as rock or rebar, could become lodged in header or

cleaner), Appx. 0025 (Ex. A at 109:17-25).

    Whatley admitted that a proper cause and origin analysis under NFPA 921 would

require him to eliminate these other potential causes. Appx. 0018 (Ex. A at 83:1-12). He

initially testified at his deposition that he could not definitively eliminate the ingestion of

foreign objects as a cause because it is possible for that to occur without the object causing damage or leaving physical evidence. Appx. 0030 (Ex.  A at 131:3-17).  But later in his deposition, he testified that he would eliminate it as a potential cause solely because there was "no evidence of collateral damage cause by foreign material."  Appx. 0036 (Ex. A at 171:3-172:16).

Because Whatley cannot reliably eliminate ingestion of a foreign object as a possible cause of the fire, his opinions violate NFPA 921, and exclusion of his testimony is appropriate.

> 2. *Whatley failed to eliminate smoldering materials from the first, October 23, 2017 fire as a potential cause of the fire at issue.*

Whatley also failed to reliably eliminate smoldering material as a potential cause. Whatley concedes an ember "could have remained in the machine" after the first, October 23, 2017 fire and admits cotton can smolder "for days."  Appx. 0025-0028 (Ex. A at 112:6-12, 113:23-114:9, 119:22-120:6, 122:11-21).  Whatley says the time fuel will smolder depends on various factors—including the time between the first fire and the second fire, the amount and density of the fuel (cotton) in the accumulator after the first fire, and amount of air flow/wind conditions.  Appx. 0027, 0029 (Ex. A at 118:11-23, 128:16-129:3).  Whatley does not have information about any of these factors for this case.  Appx. 0025 (Ex. A at 111:25-112:5) (length of time), Appx. 0027 (Ex. A at 117:21-23) (amount of cotton), Appx. 0027 (Ex. A at 118:24-25) (all factors), Appx. 0029-0030 (Ex. A at 128:16-129:9) (same).

Whatley discounts the presence of smoldering materials by speculating that (a) the fire would have grown by the time the operator (Hughes) approached the machine on October 24, 2017, and (b) there would have been physical damage to the machine.  Appx. 0028, 0030 (Ex. A at 124:3-14, 130:5-13).  There is no basis for either opinion:

(a)     Whatley can point to no source supporting the idea that smoldering cotton would have either gone out or grown before Hughes approached the machine on October 24.  Appx. 0029 (Ex. A at 125:16-24).  The NFPA 921 sections addressing smoldering in general depend on the factors (time, fuel amount/density, air flow) that Whatley does not know.  Appx. 0029-0030 (Ex. A at 127:22-129:9).

(b)     Whatley does not know whether there was physical damage to the machine because he did not inspect it after the first fire and admits the first fire may have caused damage.  Appx. 0016 (Ex. A at 75:14-76:1).

Whatley's say-so is the only connection between his smoldering opinions and the underlying data.  *Cf. Barnett v. Procom Heating, Inc.*, No. 4:17-CV-380-A, 2018 WL 1597406, at *4 (N.D. Tex. Apr. 2, 2018).  In *Barnett*, the court excluded an expert's fire cause theory because of "a number of missing facts" necessary to support the theory.  *Id.* The Court should exclude Whatley's opinions for similar reasons: "there is simply too great an analytical gap between the data and the opinion proffered."  *Joiner*, 522 U.S. at 146.

D.     Whatley's metal-on-metal-contact opinion is conclusory.

Whatley saw no fire patterns or any other physical evidence that the fire originated in the cleaner.  Appx. 0015 (Ex. A at 63:10-20, 64:2-13). Instead he concludes it originated there solely because of Hamers' missing bolt head theory.  Appx. 0015, 0019-0020 (Ex. A at 62:11-63:9, 87:12-88:1, 89:12-19).  Whatley did not independently analyze Hamers' hypothesis.  Appx. 0020-0023, 0036 (Ex. A at 90:15-25, 93:20-94:8, 94:17-95:13, 98:20-

99:3, 100:6-12, 105:4-11, 174:12-23).  Hamers told Whatley he saw evidence of metal-on-metal contact, and Whatley "took it at face value."  Appx. 0020 (Ex. A at 91:14-92:4).

Any opinions from Whatley about missing bolt heads, metal-on-metal contact, or sparks in the cleaner area are conclusory.  *See Gharda USA, Inc.*, 464 S.W.3d at 352 ("'Expert testimony is unreliable if it is based on unreliable data . . . .'") (quoting *Ledesma*, 242 S.W.3d at 38-39).  Deere requests the Court exclude this testimony.[7]

E.    Whatley's "hydraulic oil leak" opinions are unreliable because they are conclusory and based on altered evidence.

After observing the header in its altered state in May 2020, Whatley decided the "thermally induced discoloration" identified in his report was instead caused by leaking hydraulic fluid.  Appx. 0011-0012 (Ex. A at 48:25-49:15; 50:22-51:5; 52:8-12).  He bases his new opinion on leakage in a hydraulic connection observed when he inspected the header in May 2020—over 2 ½ years after the fire.   Appx. 0011 (Ex. A at 48:15-24).  Whatley acknowledges the header's condition changed drastically between the October 2017 fire and May 2020 inspection:  it had changed owners twice, harvested thousands of acres, was rebuilt/serviced by a selling dealer, and repainted.  Appx. 0016-0017 (Ex. A at 76:16-77:14).  And field service technician Owen testified he sees hydraulic fluid on green Deere paint daily; it is clear and shiny; and the discoloration depicted in the following December 2017 inspection photo is not from hydraulic fluid:

---

[7]   Hamers' metal-on-metal contact opinions are also unreliable for the reasons discussed in Deere's Motion to Exclude the Expert Testimony of Steve Hamers and Brief in Support.



*RIMG2016*

Appx. 0048-0049 (Ex. C at 35:8-37:21); *see also* Deere's Mot. for Spoliation (ECF No. 49), Appx. at 0074 (Ex. H ¶ 7) (discussing December 2017 inspection and thermal damage photo).

Whatley's hydraulic-oil opinions are conclusory and lack any reliable basis. Deere requests the Court exclude them.

## IV.
## CONCLUSION AND PRAYER

Deere requests the Court grant its motion to exclude the expert testimony of Mark Whatley and for such other relief to which Deere may be entitled.

Respectfully submitted,


GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile

By: /s/ Chris A. Blackerby
    Chris A. Blackerby
    State Bar No. 00787091
    cblackerby@germer-austin.com
    Ben Zinnecker
    State Bar No. 24066504
    bzinnecker@germer-austin.com

**ATTORNEYS FOR DEFENDANT**
**DEERE & COMPANY**


## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), I certify the motion is opposed.  I further certify, on September 30, 2020, I corresponded by email with Plaintiff's counsel David Taylor about the topics in this motion.  An agreement could not be reached for the reasons reflected in the motion above.


/s/ Chris A. Blackerby
Chris A. Blackerby/Ben Zinnecker

**CERTIFICATE OF SERVICE**

On September 30, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.   I certify that I have served all counsel of record electronically and/or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ Chris A. Blackerby
Chris A. Blackerby/Ben Zinnecker